`THE PEOPLE, for use of Stanley B. Sexton,

*v.*

HENRY E. SEELYE.

*Filed at Ottawa October 31, 1892.*

1. SURETY—*what will release.* It is a general rule, that any agreement between the creditor and the principal debtor, which varies essentially the terms of the contract by which the surety is bound, without the consent of the surety, will release him from liability. If the duties which the principal is to perform are varied by agreement between the principal and obligee, after the surety has become bound, such surety will generally be thereby discharged.

2. So, also, any dealings with the principal by the creditor, which amount to a departure from the contract by which the surety is bound, and which, by possibility, might materially vary or enlarge the latter's liability, without his consent, generally operate as a discharge of the surety.

3. An agreement between a guardian and ward, after the majority of the latter, that the property and estate in the hands of the guardian, instead of being turned over to the ward, may be retained by the guardian and used in his business, or used in the joint business of the guardian and ward, if binding on the ward, will release the surety in the guardian's bond.

4. PLEADING—*breach of guardian's bond.* An allegation in a declaration on a guardian's bond of a settlement of the guardian's accounts in the probate court, and a failure, neglect and refusal to pay over to the ward the amount found to be due by that court, is a sufficient assignment of a breach of the condition that the guardian shall faithfully discharge the office and trust imposed upon him according to law; and the breach of that condition furnishes as ample a basis for a recovery as would a breach of any of the other conditions of the bond.

5. SAME—*plea of release of surety on guardian's bond.* In an action upon a guardian's bond for a failure to pay over the sum found due his ward, the surety pleaded, that after the execution of such bond, and after the ward had become of age, and before the guardian had rendered his account in the probate court, said guardian and ward entered into a secret agreement, without the knowledge or consent of the defendant, by means of which the funds and estate of the ward in the hands of the guardian were withdrawn from the guardianship, and were, by mutual agreement of the guardian and ward, invested in their

private business, and thereby became lost, whereby, etc.: *Held,* that the plea was good as a plea of release of the surety.

6. SAME—*replication to plea of release of surety.* If, in such case, the contract between the guardian and ward is invalid and voidable, on account of the influence of the guardian over the ward, that is a matter that should be set up by way of replication.

7. PRACTICE IN THE SUPREME COURT—*assignments of error in Appellate Court when open in this court.* Where it is insisted in this court that the Appellate Court erred in not affirming the judgment of the trial court, all questions of law presented by the assignment of errors in the former court will be open for discussion in this court.

8. PRACTICE—*directing what the verdict shall be.* The correctness and propriety of an instruction of the court directing the jury to find for the plaintiff in a given sum, depends upon whether the evidence tended to establish a state of facts that would have warranted a different result. In determining that question every inference which the jury might legitimately have drawn from the evidence must be regarded as admitted.

9. LIMITATIONS —*when begins to run on guardian's bond.* It is the duty of a guardian, upon the termination of his trust by his ward becoming of age, to settle his accounts and pay the latter the sum due him, and a failure on the part of the guardian at the expiration of his trust, or, at most, within a reasonable time thereafter, to settle and pay over, will constitute a breach of the condition of his bond, and entitle the ward to sue at once on the bond. In such case the Statute of Limitations will commence to run from the date of such breach.

10. But while a ward has the right to treat the guardian's failure to settle and pay over, as a breach of the bond, and bring suit at once, he is not bound to take that course. He is at liberty to rely upon his bond as securing a settlement of accounts by his guardian, and when such a settlement is had before a court of competent jurisdiction, and the balance found, the failure of the guardian to pay the amount may be treated as a new substantive breach of the condition of the bond, dating from the time of the guardian's default in the performance of the order of the court.

11. GUARDIAN'S BOND—*condition of, construed.* Under a condition in a guardian's bond that he shall "faithfully discharge the duties and trusts of his office," upon an accounting before any competent court, it becomes the duty of the guardian to pay over to his ward the balance found due, and only by such payment can he perform the obligation imposed by his bond to faithfully discharge the office and trust of guardian according to law.

12. GUARDIAN AND WARD—*when the relation ceases.* The office and trust of guardianship of a minor is one which can exist only during

the minority of the ward, and when he becomes of age the guardianship is thereby *ipso facto* terminated. But the court appointing him may retain jurisdiction over him only to compel an accounting and settlement of his administration, after the ward has attained his majority.

13. SAME—*dealings between, shortly after ward is of age.* The rule in courts of equity in relation to the dealings of parties sustaining trust relations to each other is a general one, applicable alike to all cases where fiduciary relations exist, such as may subsist between a parent and his child, or agent and his principal, or attorney and his client, or trustee and his beneficiary, as well as to those which subsist between a guardian and his ward after the ward has become of age, but before he has ceased to be amenable to the influences acquired by the guardian through the guardianship relation. The remedy in courts of equity in such cases is to set the transaction aside, and charge the party occupying the fiduciary position as his trustee in respect of the property.

14. But it does not follow from this that a guardian who obtains money or other property of his ward for the first time after the relation of guardianship has terminated, takes such property as guardian, so as to be chargeable with it in his official capacity. His office as guardian is at an end, except for the mere purpose of accounting and settlement. If he afterward uses his influence, derived from his former relationship, so as to get into his hands other moneys or property, a court of equity may interfere, and charge him as trustee or compel him to make restoration, but he can not be charged as guardian.

15. JURISDICTION—*in general—defined.* Jurisdiction is the power to hear and determine the subject matter in controversy between the parties to a suit, to adjudicate or exercise any judicial power over them. The question is, whether, in a case before a court, its action is judicial or extra-judicial, with or without authority of law to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction. What shall be adjudged between the parties, and with which is the right of the case, is judicial action, by hearing and determining it.

16. SAME—*presumption as to jurisdiction of inferior and superior courts.* A court of superior jurisdiction, proceeding within the general scope of its powers, is presumed, in collateral proceedings, to have had jurisdiction of the cause until the contrary appears; but the facts which give an inferior court jurisdiction must appear on its record. If the jurisdiction or the want of it appears on the face of the proceeding, the result is the same whether the court ranks as a court of superior or of inferior jurisdiction.

17. PROBATE COURT — *re-statement of guardian's account — whether part of the record.* For the purpose of showing the items charged to a guardian in his settlement with the court, a paper from the files of the court was produced, which consisted of a re-statement of the account, showing each item of debits and credits, and the balance found to be due. At its foot appeared a memorandum, "Approved in open court, March 4, 1880," which was signed by the judge. In the order of the court of that date such re-statement of the account was referred to, and expressly approved and ordered to be recorded : *Held,* that such document was a part of the judgment of the court, and furnished evidence as to the nature of the several items embraced in the account, and of the judgment of the court upon each item.

18. SAME — *jurisdiction — guardian's account.* A probate court, in stating a guardian's account, charged him with moneys and property of the ward's estate coming to his hands up to the date of the ward's majority, the amount of which was stated in the account, and also with moneys which came to his hands after the ward became of age : *Held,* that the finding of the court as to the first items was within its jurisdiction, but as to the post-majority charges the court had no jurisdiction, and that the judgment as to them was a nullity. If the guardian received rents, issues or profits of the estate already in his hands. and continuing in his control after the majority of the ward, he would be chargeable with them, notwithstanding the termination of his office.

19. SAME — *settlement with guardians.* By the act of 1877, establishing probate courts in counties having the necessary population, all matters of guardianship were transferred from the county courts in such counties to the probate court, and such court is invested with jurisdiction, upon the termination of guardianship, to settle the accounts between a guardian and his ward, although the guardian may have been appointed by the county court before such act took effect.

20. The probate court, in settling guardians' accounts, has no jurisdiction to take into consideration and charge the guardian with dealings between him and his ward after the majority of the latter. If the ward, after becoming of age, borrows money, or if he sells and conveys his lands and hands the money over to his guardian, or suffers him to obtain possession of it, such transaction will establish the relation of debtor and creditor, or that of trustee and beneficiary, according to the circumstances; but the money will not become a part of the estate of the ward in the hands of the guardian, and the probate court has no jurisdiction to charge the guardian with such money.

21. SAME — *extent of jurisdiction — no general chancery powers.* Under the constitution and the statute, probate courts are invested with original jurisdiction of the appointment of guardians and the settlement of their accounts. This jurisdiction is limited to the specific subject of the settlement of guardians' accounts. While such courts may, within

the limits of the jurisdiction thus conferred, exercise chancery powers, they are not given general chancery jurisdiction over the affairs of persons who may happen to hold the office of guardian.

22.  The probate courts doubtless may, in settling guardians' accounts, charge a guardian with any sum of money with which, as guardian, he is properly chargeable, and give him any credit to which, as guardian, he is entitled.  But they can not settle all equities between a guardian and his late ward, or adjust accounts or dealings which do not properly pertain to the guardianship.

23.  SAME—*jurisdiction in general.*  Probate courts are courts of limited jurisdiction, but while acting within the scope of their constitutional and statutory authority they are not courts of inferior, as contradistinguished from courts of superior, jurisdiction.

24.  JUDGMENT—*attacking collaterally.*  If a court has jurisdiction of the subject matter and the parties, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been.  Its final order can not be regarded as a nullity, and can not therefore be collaterally impeached.

25.  But if the court has proceeded without jurisdiction, it matters not how technically correct and precisely certain in point of form the record may appear.  Its judgment is void to every intent and for every purpose, and it must be so declared in every court in which it is presented.

26.  In the one case, the court is invested with power to determine the rights of the parties, and no irregularity or error in the execution of the power can prevent the judgment, while unreversed, from disposing of such rights as fall within the legitimate scope of its adjudication; while in the other, the authority is wholly usurped, and the judgment and the orders are the exercise of arbitrary power under the forms, but without the sanction, of law.

APPEAL from the Appellate Court for the First District;— heard in that court on writ of error from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This was an action of debt, brought by the People of the State of Illinois against Henry E. Seelye, upon a guardian's bond, of which the following is a copy:

"Know all men by these presents, that we, Henry M. Curtis, George F. Bissell, of the county of Cook and State of Illinois, are held and firmly bound unto the People of the State of Illi-

13—146 ILL.

nois, for the use of Stanley B. Sexton, minor, in the penal sum of one hundred and twenty thousand dollars, current money of the United States, which payment, well and truly to be made and performed, we bind ourselves, our heirs, executors and administrators, jointly, severally and firmly, by these presents. Witness our hands and seals, this 3d day of January, A. D. 1873.

"The condition of this obligation is such, that, if the above bounden Henry M. Curtis, who has been appointed guardian of Stanley M. Sexton, shall faithfully discharge the office and trust of such guardian according to law, and shall make a true inventory of all the real and personal estate of the ward that shall come to his possession or knowledge, and return the same into the County Court at the time required by law, and manage and dispose of all such estate according to law, and for the best interest of said ward, and faithfully discharge his trust in relation thereto, and to the custody, nurture and education of said ward, and render an account on oath of the property in his hands, including the proceeds of all real estate that may be sold by him, if any, and the management and disposition of all such estate, within one year after his appointment, and at such other time as shall be required by law or directed by the court, and upon removal from office, or at the expiration of his trust, settle his accounts in said court, or with the ward, or his legal representatives, and pay and deliver all the estate, title papers and effects remaining in his hands, or due from him on such settlement, to the person or persons lawfully entitled thereto, then this obligation shall be void, otherwise to remain in full force and virtue.

HENRY M. CURTIS,    [Seal.]
GEORGE F. BISSELL, .[Seal.]
J. P. BROOKS,        [Seal.]
H. E. SEELYE.        [Seal.]"

The declaration consists of two counts, which are in all material respects identical in their phraseology. Said counts,

after reciting the bond and its condition, allege that, upon the execution and delivery of the bond, to-wit, on the 3d day of January, 1873, said Henry M. Curtis took upon himself the office and trust of guardian of Stanley B. Sexton, as in said condition mentioned, and immediately thereafter, as such guardian, assumed and took full possession, control and management of all real and personal estate of Sexton, and thenceforth was and acted as such guardian until Sexton attained his majority, and until the settlement of his guardianship accounts in the Probate Court of Cook county, on or about March 4, 1880. Yet the plaintiff in fact saith, that the said Curtis did not faithfully discharge his office and trust as guardian of said Sexton according to law, or according to the condition of said writing obligatory, but neglected and refused so to do, to the injury of said Sexton.

"And for assigning a breach of said condition, the said plaintiffs say, that after the said appointment of said Curtis as such guardian, and the making of the said writing obligatory as aforesaid, and before the day last mentioned, divers sums of money and other property belonging to the said Stanley B. Sexton, amounting to a large sum, to-wit, the sum of one hundred and twenty thousand dollars, came to the hands of the said Henry M. Curtis, as such guardian, and that in the Probate Court of said Cook county, in the February term thereof, A. D. 1880, to-wit, on the 4th day of March, 1880, the said Henry M. Curtis, guardian as aforesaid, settled his accounts as such guardian, and that on such settlement, on the day last aforesaid, by the consideration and order of said Probate Court, there was found due from said Henry M. Curtis, as such guardian as aforesaid, to the said Stanley B. Sexton, the sum of fifty-five thousand one hundred and forty-one dollars and ten cents, on account of moneys and property that had come into the hands of said Curtis, as such guardian, and thereupon the said Probate Court, on said March 4, 1880, ordered the said Henry M. Curtis, as such guardian, to pay said

sum to the said Stanley B. Sexton, within thirty days thereafter, which said order of said Probate Court still remains in full force, unreversed, unsatisfied, and no appeal was ever taken therefrom : Yet the said Henry M. Curtis, guardian as aforesaid, has not paid the same or any part thereof to the said Stanley B. Sexton, but has hitherto neglected and refused so to pay the same, although often requested to so do."

To said declaration, the defendant pleaded, 1. *non est factum;* 2. the ten years statute of limitations; 3. *nul tiel record,* and upon these pleas issues of fact were taken. The defendant also pleaded a fourth plea as follows :

"And for a further plea in this behalf, by leave of the court first had and obtained, said defendant says *actio non,* because he says, that after the execution of the said bond by him as surety, and after the said Stanley B. Sexton became of full age, to-wit, after the 25th day of August, A. D. 1874, the said Stanley B. Sexton and Henry M. Curtis, the guardian for whom the said bond was given, entered into a secret agreement, without the knowledge or consent of this defendant, by means of which the funds and estate in the hands of said Curtis, as guardian, and belonging to the said Sexton, were withdrawn from the guardianship, and before the time the said Curtis, as guardian, rendered his account in the Probate Court of Cook county, and were, by the mutual agreement of the said Curtis and the said Sexton, invested in their private business, and thereby became lost, whereby this defendant ceased to be and become a surety for such funds so held by said Curtis, as such guardian, and became from thenceforth wholly released and discharged from any and all liability as surety upon said bond, and this the said defendant is ready to verify," etc.    ·

To this plea a general demurrer was sustained, and the defendant having duly excepted to the decision of the court sustaining said demurrer, elected to abide by his said plea.

At the trial, which was had before the court and a jury, the plaintiffs read in evidence the guardian's bond and the order of the Probate Court of Cook county referred to in the declaration, and rested their case. Said order bore date March 4, 1880, and was as follows:

"This day came Henry M. Curtis, guardian of the above named minor, in his own proper person, and also came said Stanley B. Sexton, in person and by R. W. Pike, Esq., his attorney, and the said guardian presented to the court his account with his ward filed herein on the 22d day of May, A. D. 1876, and the court having examined the same, refused to approve said account, and thereupon the court restated the said account, showing receipts amounting to $69,595.79, and disbursements amounting to $14,454.69, leaving a balance in the hands of said guardian amounting to $55,141.10, which account as restated is approved by the court and ordered to be recorded; and it appearing to the court that said Stanley B. Sexton has arrived at full age, it is ordered that said guardian pay over to the said Stanley B. Sexton the said balance, amounting to $55,141.10, in his hands, within thirty days from this date, and the said guardian being now present in court, no further notice hereof is required to be given to him."

The defendant then read in evidence the petition of Stanley B. Sexton, filed in the County Court of Cook county December 26, 1872, praying for the appointment of Henry M. Curtis as his guardian; and also the order of said County Court, entered July 18, 1873, in pursuance of said petition, appointing Curtis guardian of the person and estate of Sexton, and requiring of him a guardian's bond in the penal sum of $120,000, with at least two sufficient sureties, to be approved by said court, conditioned and payable as required by law. Said order also recited the presentation to said court and the approval of said bond, and ordered that letters of guardianship issue to said Curtis.

The defendant also read in evidence a petition by said Sexton, filed in said County Court October 21, 1875, representing, among other things, that the petitioner attained his majority August 25, 1874; that said guardian had made no report and had rendered no account, and that the petitioner had been unable to obtain from him a statement of his accounts as guardian, and praying that he be cited before said court to render his account in the matters pertaining to his guardianship. Also a citation issued by said court in pursuance of said petition, and served on said guardian October 26, 1875.

The defendant also read in evidence a statement by said guardian of his accounts with his ward, verified by his affidavit, and filed in said County Court May 22, 1876, showing that his total receipts were $7452.32, and his total expenditures and disbursements $10,491.29, thus showing a balance in his favor of $3038.97; also certain objections to said account filed in said County Court, on behalf of said Sexton, at the May term, 1876, of said court.

The defendant then produced from the files and records of the Probate Court of Cook County, and read in evidence, the restatement of the accounts between said guardian and ward, made and approved by the Judge of that court and signed by him, said document purporting to be the re-statement of said accounts made March 4, 1880, and on which the order of the Probate Court of that date was based. The accounts, as thus restated, consist of two parts or divisions, one covering transactions from the date of the appointment of the guardian to August 25, 1874, the day his ward attained his majority, and the other covering transactions from the last named date to the date of the re-statement of the account. Thus, the first statement charges the guardian, under various dates between the date of his appointment and August 25, 1874:

Statement of the case.

|  |  | *Dr.* |
|---|---|---|
|  | To sundry items received........................ | $9,311.04 |
| 1872. |  |  |
| Oct. 4.... | Claim against H. E. Seelye, estate moneys in his hands......................................... | 9,500.00 |
|  | Compound interest on same to March 4, 1880, 7 years and 5 mos., deducting $500 for value of house turned over to Sexton Mar. 24, 1879....... | 4,473.61 |
|  | To 6 per cent compound interest on balance of ward's income in the guardian's hands, $3,046.13, Oct. 4, 1873, from that date, 6 years, 5 months and 9 days, to March 4, 1880......................... | 1,389.29 |
|  | To 6 per cent compound interest on balance of ward's income in guardian's hands Aug. 25, 1874, received by him after Oct. 4, 1873, and included in amount last above mentioned, $3,402.70, to Mar. 4, 1880, 5 years, 6 months and 9 days........ | 1,294.07 |
|  | To amount of penalty and interest paid to redeem from tax sale of ward's property................. | 275.88 |
|  | To interest on same to Mar. 4, 1880 ................ | 102.77 |
|  |  | $26,346.66 |

In the same statement, the guardian is credited, under various dates during the same period, with sundry disbursements, amounting to $3253.95.

In the second part of the accounts, as restated, the guardian is charged as follows:

| 1874. |  |  |
|---|---|---|
| Sep. 4. | To cash from sale of 83 ft. on Indiana avenue..... | $21,700.00 |
| 1875. |  |  |
| Mar. 7. | Loan from Sheldon and Waterman................ | 12,000.00 |
| Mar. 6 to | May 20. Items of cash received.................... | 953.84 |
|  | To 6 per cent interest from Sept. 4, 1874, to March 4, 1880, 5 years, 6 mos., $17,800, the same being balance of amount received from sale of Indiana avenue property, after deducting amounts paid to and for account of Sexton, from Aug. 25, 1874, to Jan. 1, 1875............................. | 6,735.02 |
|  | To compound interest on $5,500, balance of $12,000 loan for 5 years................................. | 1,860.24 |
|  |  | $43,249.13 |

The guardian was also credited in said second statement with sundry disbursements, and payments made to his ward, between August 25, 1874, and December 30, 1875, amounting to $11,200.74.

A recapitulation of the two accounts was then made in which the totals of the debits of the two accounts were added together, and the two totals of credits deducted, leaving $55,-141.10, as the sum due from said guardian to his ward, that being the identical sum found by the judgment of the Probate Court to be due from said guardian to his ward, and which said guardian was ordered to pay over to said ward. Said recapitulation was as follows:

*RECAPITULATION.*

*Henry M. Curtis, guardian.* *Dr.*

| | |
|---|---|
| To amount of receipts from Oct. 4, 1872, to Aug. 25, 1874, as per minority account.......................................... | $26,346.66 |
| To amount of receipts from Aug. 25, 1874, to March 4, 1880.... | 43,249.13 |
| Total debit................................................ | $69,595.79 |

*Cr.*

| | | |
|---|---|---|
| By amount disbursed from Oct. 4, 1872, to Aug. 25, 1874............................................... | $3,253.95 | |
| By amount disbursed from Aug. 25, 1874, to March 4, 1880................................................ | 11,200.74 | |
| Total credit...................................... | | 14,454.69 |
| Balance due March 4, 1880.................................... | | $55,541.10 |

The foregoing being, in substance, all the material evidence adduced at the trial, the court, at the instance of the plaintiffs, instructed the jury as follows:

"The court instructs the jury, that it is their duty, upon the evidence, to render their verdict for the plaintiffs, for the use of Stanley B. Sexton, for $120,000 debt, and damages $55,-141.10, with interest at the rate of six per centum per annum from March 4, 1880, to this date."

The defendant asked the court to give to the jury various instructions presenting his theory of the law applicable to the several defenses sought to be interposed by his pleas, all of which instructions were refused. The jury thereupon, in obedience to the instruction thus given them, found a verdict in favor of the plaintiffs for $120,000 debt and $85,468.70 damages, and the court, after denying the defendant's motion for a new trial, rendered judgment in favor of the plaintiffs for their debt and damages as found by the verdict and for costs.

On writ of error to the Appellate Court, said judgment was reversed, no order being entered remanding the cause to the Circuit Court for a new trial. Said judgment of reversal is now brought to this court by appeal.

Messrs. QUIGG & BENTLEY, for the appellant:

The question whether the order of the probate court of March 4, 1880, is void, because it charged the guardian with debts alleged to have accrued after the majority of the ward, must be determined on the same grounds as if urged by the principal in the bond. *Ammons* v. *People*, 11 Ill. 6.

The state of the pleadings renders evidence inadmissible which is offered to prove that the guardian was in fact charged by said order with money received after the ward's majority. *People* v. *Gray*, 72 Ill. 343.

Even if said order did include post-majority items, the inclusion was, at most, error, and does not make the order absolutely void.

The probate court is by law charged with the duty of settling guardians' accounts. Const. art. 6, sec. 20; Rev. Stat. chap. 37, sec. 253.

When engaged in settling guardians' accounts, the probate court is practically a court of equity. *Bond* v. *Lockwood*, 33 Ill. 212; *Dixon* v. *Buell*, 21 id. 203; *In re Steele*, 65 id. 322; *Klokke* v. *Dodge*, 103 id. 135; *In re Corrington*, 124 id. 366; *People* v. *Gray*, 72 id. 343.

The distinction between superior and inferior courts is stated in *Bostwick* v. *Skinner*, 80 Ill. 147, and *Gardner* v. *Maroney*, 95 id. 552.

Where the relation of guardian and ward continues, though the authority of the guardian has terminated, post-majority items may properly be included in an order stating a guardian's account. *Mellish* v. *Mellish*, 1 S. & S. 138; *Bombeck* v. *Bombeck*, 18 Mo. App. 26; *Armstrong's Heirs* v. *Walkup*, 12 Gratt. 608.

Cases holding the inclusion of extra guardianship items, not post-majority items, improper, examined : *Sage* v. *Hammond*, 27 Gratt. 651 ; *Dodge* v. *St. John*, 96 N. Y. 260 ; *Corbett* v. *Carroll*, 50 Ala. 315 ; *Indell* v. *Barbee*, 9 Ired. L. 250 ; *Ford* v. *Clough*, 8 Greenl. 334 ; *McClure* v. *Commonwealth*, 80 Pa. St. 167.

Under circumstances entirely consistent with this record, the relation of guardian and ward may continue after majority. Hill on Trustees, 157, 158 ; Tyler on Infancy and Coverture, sec. 178 ; 1 Story's Eq. Jur. sec. 317 ; *Stinson* v. *Leary*, 69 Wis. 269 ; *Nunnery* v. *Day*, 64 Miss. 457 ; *Gillett* v. *Wiley*, 126 Ill. 310 ; *Carter* v. *Tice*, 120 id. 277 ; *Gilbert* v. *Guptill*, 34 id. 112.

The Statute of Limitations runs, not from the majority of the ward, but from date of the breach declared on. Wood on Limitations, 46-50 ; *Austin* v. *Moore*, 7 Metc. 116 ; *Avnott* v. *Holden*, 16 Eng. L. and Eq. 142 ; *Saunders* v. *Coward*, 15 M. & W. 48 ; *Adams* v. *Jones*, 68 Ala. 117 ; *State* v. *Hoshaw*, 86 Mo. 193.

The trust did not terminate before a final account was stated. *Gilbert* v. *Guptill*, 34 Ill. 112 ; *Bruce* v. *Doolittle*, 81 id. 103.

Messrs. SWIFT, CAMPBELL & JONES, for the appellee :

The probate court, in re-stating the guardian's account of March 4, 1880, exceeded its jurisdiction, and the order of that date, based upon such re-stated account, is therefore void. *Buckmaster* v. *Carlin*, 3 Scam. 104 ; *Kenney* v. *Greer*, 13 Ill. 442 ; *Munroe* v. *People*, 102 id. 406.

A judgment or decree may be attacked collaterally for want of jurisdiction. *Bigelow* v. *Forrest*, 9 Wall. 339 ; *Windsor* v. *McVeigh*, 93 U. S. 274 ; *Ex parte Lange*, 18 Wall. 163 ; *Scamster* v. *Blacklock*, 83 Va. 232 ; *Fithian* v. *Monks*, 43 Mo. 502 ; *Wood* v. *Stanberry*, 21 Ohio St. 142 ; *Spoors* v. *Coen*, 44 id. 497.

Moneys and property coming to the guardian after majority of ward, are not chargeable to him as guardian. *Hinckley* v. *Harriman*, 45 Mich. 343; *Allen* v. *Crossland*, 2 Rich. Eq. 68; *Hindman* v. *State*, 61 Md. 471; *Merrells* v. *Phelps*, 34 Conn. 109; *Crowell's Appeal*, 2 Watts, 295; *Bull* v. *Towson*, 4 W. & S. 557; *People* v. *Toomey*, 122 Ill. 308; *Woodbury* v. *Hammond*, 54 Me. 332.

Surety of an officer is not liable for money coming to the principal after the termination of his office. *People* v. *Foster*, 133 Ill. 496.

The failure of Curtis to comply with the order of the probate court is not a breach of the condition of the bond. *Mix* v. *Vail*, 86 Ill. 40; *Railroad Co.* v. *Higgins*, 58 id. 128; *Sharp* v. *Bedell*, 5 Gilm. 88; *Morgan* v. *Morgan*, 4 Gill & J. 395; *Ovington* v. *Smith*, 78 Ill. 250; *Myres* v. *Parker*, 6 Ohio St. 501.

The facts stated in defendant's third plea constitute a valid defense to the action. *Rutter* v. *Hall*, 31 Ill. App. 647.

The Statute of Limitations is a bar to the suit. *Henderson* v. *Henderson*, 54 Md. 332; *Mason* v. *Johnson*, 13 S. C. 20; *Motes* v. *Madden*, 14 id. 488; *Langston* v. *Shands*, 23 id. 149; *Jones* v. *Jones*, 91 Ind. 378; *Lane* v. *Farmer*, 11 Lea, 568.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

The errors assigned in this case in the Appellate Court presented four grounds upon which the defendant sought to obtain a reversal of the judgment of the Circuit Court, viz. :

1. That the failure of the guardian to comply with the order of the Probate Court of Cook county was not a breach of the condition of the bond upon which the suit was brought.

2. That the remedy by suit on said bond, at least as against the defendant, is barred by the Statute of Limitations.

3. That the order of the Probate Court of March 4, 1880, was without jurisdiction and therefore void.

4. That the Circuit Court erred in sustaining a demurrer to the defendant's fourth plea.

The only one of these propositions considered or passed upon by the Appellate Court seems to have been the first, and that proposition being sustained, was held to be conclusive of the litigation, so as to render a consideration of the other questions presented by the assignment of errors unnecessary. Said court thereupon reversed the judgment of the court below, and by refusing to enter a remanding order, made said judgment of reversal a final determination of the suit. The plaintiffs, who are the appellants here, insist that the Appellate Court was in error, and that not only the point expressly ruled upon by that court, but all of said propositions, should have been decided adversely to the defendant, and that the judgment of the Circuit Court should have been affirmed. It will thus be seen that all the questions presented by the assignment of errors in the Appellate Court are open for discussion here, and they will be considered in the order in which they are above stated.

The first of these questions arises upon the face of the declaration. The contention is, that no breach of the condition of the writing obligatory sued on is alleged, and therefore that the plaintiffs have failed to show any right to recover by their declaration. The only breach alleged consists of the failure, neglect and refusal by the guardian to pay over to his ward the sum of $55,141.10 found due March 4, 1880, by the Probate Court of Cook county and ordered to be paid. It is said that because the condition of the bond obligated the guardian, among other things, at the expiration of his trust, to settle his accounts in the County Court of Cook county, or with his ward, or his legal representatives, and pay to his ward such sum as should be found due on such settlement, a settlement in the Probate Court was not within the terms of the condition, and therefore that a failure to pay the sum found due on such settlement was no breach.

If the only obligation imposed by the condition of the bond had been, to make settlement in the County Court and

to pay over to the ward the sum found due on such settlement, there might perhaps be some force in the view thus urged. But the terms of the condition are not thus limited. Manifestly the settlement contemplated need not necessarily be made in the County Court, as by the express terms of the condition, it might be made with the ward himself or with his legal representatives, and when so made, the condition provided for the payment by the guardian to his ward of the sum thus found due.

But the condition contained another and much broader provision which, in our opinion, obligated the guardian to pay over to his ward the sum found due upon an accounting had before any tribunal having competent jurisdiction to state the accounts between the guardian and ward, and that was the condition that the guardian should "faithfully discharge the office and trust of such guardian according to law." The law fixing the duties of guardians, in the discharge of their office and trust, as it stood at the time of the execution of said bond and as it now stands, required that the guardian, "at the expiration of his trust, shall pay and deliver to those entitled thereto, all the money, estate and title papers in his hands, as guardian, or with which he is chargeable as such." R. S. 1874, chap. 64, sec. 15. The performance of this duty necessarily involved an accounting, either with the ward, or before some judicial tribunal having competent jurisdiction and authority to investigate the guardian's accounts and ascertain the balance due the ward. Upon such accounting, before any competent tribunal, it became the duty of the guardian, in the proper discharge of his office and trust, to pay over to his ward the balance found due, and only by such payment could he perform the obligation imposed by his bond, to faithfully discharge the office and trust of guardian according to law.

If the accounting had been before a court of chancery instead of the Probate Court of Cook county, can there be any

doubt that the payment of the amount thus found due would have been within the purview of this condition? The duty to pay over the balance in his hands would arise, whenever, in any form or in any forum, that balance was ascertained and determined in such way as to be binding and conclusive upon both him and his ward.

There can be no doubt that said Probate Court had jurisdiction to settle the accounts between the guardian and his ward. Prior to July 1, 1877, County Courts were vested by law with jurisdiction in all matters pertaining to the appointment of guardians and the settlement of their accounts. 1 Starr & Curtis' Stat. 718. By the act establishing Probate Courts in all counties having a population of one hundred thousand or over, which became operative July 1, 1877, and under which the Probate Court of Cook county was organized, jurisdiction in matters pertaining to the appointment of guardians and the settlement of their accounts was conferred upon them, and guardianship matters pending in the County Courts were ordered to be transferred to such Probate Courts when organized, and they were given jurisdiction to complete all unfinished business in relation thereto. Ibid. 732. By that statute, the matter of the present guardianship became transferred to said Probate Court, and that court acquired jurisdiction, upon the termination of said guardianship, to settle the accounts between the guardian and his ward.

In determining the sufficiency of the declaration, therefore, that is to say, whether a breach of any of the conditions of the bond is assigned, we may assume the jurisdiction of the Probate Court, and the conclusive effect upon both guardian and ward of its adjudication as to the state of the guardian's accounts, and the balance due his ward. Now it is apparent, from what has been said, that if the condition providing for a settlement of said accounts in the County Court is disregarded, or rather, if it be admitted that no breach of that condition is assigned, the allegation of a settlement in the Probate Court,

and a failure, neglect and refusal to pay over to the ward the amount found due by that court, is a sufficient assignment of a breach of the condition that the guardian should faithfully discharge the office and trust imposed upon him according to law.    And we are unable to perceive why the breach of that condition of the bond does not furnish as ample a basis for a recovery as would a breach of any of the other conditions therein contained.

The second point raised is, that the present action is barred by the Statute of Limitations.    The action being on a bond, it manifestly comes within the provisions of section 16 of the statute, which provides that actions on bonds, etc., shall be commenced within ten years next after the cause of action accrued.    The present suit was brought May 24, 1888, and the only controversy is, as to when the cause of action for which it was brought must be deemed to have accrued.    If, as the defendant insists, the cause of action accrued, within the meaning of the statute, immediately upon the ward's attaining his majority, viz., August 25, 1874, or at farthest, at the date of the statement of account by the guardian, by which he claimed a balance due in his favor of $3038.97, viz., May 22, 1876, more than ten years had elapsed, and the action is barred.    If, on the other hand, as the plaintiffs claim, the cause of action now sought to be enforced did not accrue until the statement of said accounts by the Probate Court and the entry of the judgment of that court finding the amount due and ordering its payment, viz., March 4, 1880, said period of ten years had not elapsed at the date of the commencement of the present suit, and the action is not barred.

It is true the duty was imposed upon the guardian, not only by the condition of his bond, but by the express provisions of the statute, upon the expiration of his trust, which in this case was when his ward attained his majority, to settle his accounts and pay over to his ward the balance of money remaining in his hands.    And it seems to be well settled that

a failure on the part of the guardian, at the expiration of his trust, or at most within a reasonable time thereafter, to settle and pay over, constituted a breach of the condition of the bond, and entitled the ward to sue at once for the recovery of the balance of his money remaining in his guardian's hands. It may be conceded that as to such breach the statute commenced to run from the time the breach was committed.

But while the ward had a right to treat the failure to settle and pay over as a breach of the bond and bring suit at once, he was not bound to take that course. The bond secured not merely the payment of the money in the guardian's hands, but the discharge by him of every duty and the performance of every act imposed or required by law in the matter of bringing the trust relation to a close. It secured a settlement of accounts, either with the guardian in person or before some competent tribunal, in which the burden of all affirmative acts would rest upon the guardian, and in which he would be required to establish the justness of his accounts by proper vouchers or other competent proof; and it also secured the payment by the guardian to the ward of the balance found due on such settlement. All this is clearly implied by the condition to faithfully discharge the office and trust of guardian according to law.

A suit brought by the ward before an accounting had been had and a balance ascertained, would have imposed upon him the disadvantage of being compelled to take upon himself the burden of establishing affirmatively the indebtedness from his guardian to him, and that too in a forum which would be but illy adapted to the investigation and settlement of complicated accounts. Instead of taking that course, he was at liberty to rely upon his bond as securing a settlement of accounts by his guardian, and the payment of the sum found due on such settlement; and a settlement having in fact been subsequently made before a court of competent jurisdiction and a balance ascertained, the failure of the guardian to pay such balance

in obedience to the order of said court, constituted a new substantive breach of the condition of the bond, dating from the time of the guardian's default in the performance of said order. The order of the Probate Court was entered March 4, 1880, and the guardian was not in default in respect to it until thirty days thereafter. The cause of action based on such default accrued within less than ten years next prior to the commencement of the suit, and therefore it is not barred by the statute.

The next contention is, that the order of the Probate Court finding the sum of $55,141.10 due from the guardian to his ward was without jurisdiction and therefore void. The claim that said court was without jurisdiction is based upon that part of the evidence which tends to show, that, in re-stating the guardian's accounts, the court charged him with large sums of money which came into his hands after his ward had attained his majority, and therefore after his office and trust as guardian had expired.

It is of importance to notice in this connection that the verdict of the jury was the result of a peremptory instruction by the court to find for the plaintiffs, and to assess their damages at the sum of $55,141.10, with interest thereon from the date of the entry of said order of the Probate Court. In view of such instruction, all we are called upon to determine is, whether the evidence tended to establish a state of facts which would have warranted a different result. Every inference which the jury might have legitimately drawn from the evidence before them must, for the purpose of deciding the question now under consideration, be regarded as admitted.

The evidence before the jury bearing upon this question consisted, first, of the order of the Probate Court finding the amount due from the guardian to his ward, and, second, the document offered on behalf of the defendant, purporting to be a re-statement of the guardian's account, showing the several items of debits and credits, and striking the balance and showing the amount due. It becomes essential, in order to a

14—146 ILL.

proper understanding of said evidence, to determine the true relation of the last named document to the record of the proceedings of the Probate Court in the matter of said guardianship, and its value as tending to show the principles upon which the Probate Court restated said account, and the nature of the various items with which the guardian was therein charged.

We are unable to concur with the counsel for the plaintiffs in the view suggested by them that said paper is to be regarded as a mere private memorandum prepared by the probate judge to which to refer in determining the balance due from the guardian to his ward, but it is, in our opinion, as essentially a record of the judicial action of the court in the settlement of the guardian's accounts, as is the order finding the balance due and requiring its payment. Said paper was produced from the files and records of the Probate Court in the matter of said guardianship, and consists of a re-statement of said accounts, showing each item of debits and credits, and the balance found to be due, and at the foot of it appears the following memorandum and official signature of the probate judge: "Approved in open court, March 4, 1880. J. C. Knickerbocker, Probate Judge, Cook County, Ills." In the order of the Probate Court of March 4, 1880, said re-statement of account is referred to and is there expressly approved by the court and ordered recorded. Under these circumstances, it can not be doubted that said document is a part of the judgment of said court. While the order entered upon said re-statement of account evidences the judgment of the court as to the general balance due, said re-statement furnishes evidence as to the nature of each of the several items embraced in said account and of the judgment of the court upon each item. Said document may therefore be resorted to for the purpose of determining what the judgment of said court was, and whether the matters upon which it assumed to adjudicate were within its jurisdiction, just as freely and to the same extent as said order itself may be.

It will be seen by reference to said re-statement, that the sum of $55,141.10 found due from the guardian to his ward was made up of $26,346.66 of debits, less $3253.95 of credits in the account relating to transactions prior to the majority of said ward, and of $43,249.13 of debits and $11,200.74 of credits in the post-majority account. In said post-majority account the guardian is charged with various sums of money received by him at dates subsequent to the time his ward became of age, and if said account is not on its face conclusive of the fact, it at least tends to show that said moneys were not the proceeds of estate of his ward already in his hands as guardian, but were funds which came into his hands for the first time at the dates at which he was charged therewith, and with which he had nothing whatever to do during his ward's minority.

Said ward, as is abundantly shown by the record, became of age August 25, 1874. Under date of September 4, 1874, the guardian is charged with "Cash from sale of 83 feet on Indiana Av., $21,700." Under date of March 1, 1875, he is charged with, "Loan from Sheldon & Waterman, $12,000." Under subsequent dates he is charged with money received from various parties, aggregating $953.84. There is no pretense that any proceedings were had for the sale of the ward's lands prior to his majority, and the inference is at least a fair one that the moneys which came into the guardian's hands from the sale of the ward's lands were the proceeds of land sold and conveyed by the ward after he became of age and legally capable of making such conveyance. So of the money charged as resulting from a loan nearly six months after the ward became of age. If that was a loan on the ward's credit and for his benefit, and it is difficult to see how it could have been anything else, it was strictly a post-majority transaction, and the money thus obtained was not a part of or the proceeds of any estate in the guardian's possession during the minority of his ward, but was strictly a fund over which he obtained

control for the first time after his ward became of age.   It thus appears to be a fair inference from the record of the Probate Court that most if not all of the items charged against the guardian in the post-majority account consisted of funds belonging to his ward, which came into his hands and possession after the ward became of age, and over which he had had no previous control.   The question then is, whether the Probate Court, in settling the guardian's accounts, had any jurisdiction to take into consideration such post-majority dealings between the guardian and his ward.

The office and trust of guardianship of a minor is one which can exist only during the minority of the ward, and when he becomes of age, the guardianship is thereby *ipso facto* terminated.   On this subject, the rule is laid down by Mr. Schouler thus:   "As the relation of guardian and ward usually exists for merely temporary purposes, it is plain that, when those purposes are fulfilled, the trust must terminate.   The object of guardianship, in the case of infants, is fulfilled when the infant becomes of age, for he is then free and competent, under the law, to transact his own business and control his own person.   No guardian, therefore, of an infant, whether in socage, natural, testamentary, chancery, or probate guardian, can act in such capacity after the ward is twenty-one years old or has reached majority; but should present his account and settle with his ward."   Schouler on Domestic Relations, 93.   In *Overton* v. *Beavers*, 19 Ala. 625, it is said:   "The powers, authority and duties of a guardian cease when the ward attains the age of majority.   The court, from which he derived his appointment, may retain jurisdiction over him to compel an account, and settle his administration as guardian, after his ward has attained his majority.   But this is a matter only between him and the court, and the jurisdiction only subsists for a special purpose."

There is nothing in our statute changing the usual rule in this respect, or indicating an intention to prolong the rela-

tion, except for purposes of settlement, beyond the majority of the ward, but rather the contrary. The office of guardian of minors, *ex vi termini*, continues only during minority. The statute in relation to guardians and wards, after providing that males, until they attain the age of twenty-one years, and females, until they attain the age of eighteen years, shall be considered minors, authorizes County Courts to "appoint guardians of minors;" and a subsequent section provides that testamentary guardianship of a child may continue during its minority. No provision is to be found which contemplates the extension of the office or power of the guardian a single day after the ward becomes of age.

It is not and can not be claimed that the trust relation consequent upon the office of guardian may not continue *sub modo* after the ward attains his majority, but that is simply for the purpose of winding up the affairs of the guardianship, and turning over the trust property to the ward. But it seems clear that, after the guardianship has terminated by the majority of the ward, the office can not be so exercised as to bring within the official control of the guardian, property or assets not previously in his hands or under his control. If, for instance, the ward, after becoming of age, borrows money, or if he sells and conveys his lands, and hands the money over to his guardian, or suffers him to obtain possession of it, such transaction would establish the relation of debtor and creditor, or that of trustee and beneficiary, according to the circumstances, but the money would not become a part of the estate of the ward in the hands of the guardian, as guardian.

In this we are not at all unmindful of those salutary rules adopted and enforced by courts of equity in relation to transactions between persons sustaining fiduciary relations to each other. Such transactions are always viewed by those courts with great suspicion, and in some cases will be pronounced fraudulent *per se*, and in others will be sustained only upon affirmative proof by the party in possession of the influence

growing out of the fiduciary relation of the exercise of the highest degree of good faith. But these rules are rules of equity, applicable alike to all cases where fiduciary relations exist, such as may subsist between a parent and his child, an agent and his principal, an attorney and his client, a trustee and his beneficiary, as well as those which subsist between a guardian and his ward, after the ward has become of age, but before he has ceased to be amenable to the influences acquired by the guardian through the guardianship relation. The remedy which courts of equity apply in such cases is, to set the transaction aside and charge the party occupying the fiduciary position as trustee for the other party in respect to the property he has thereby gotten into his possession or under his control. But it does not follow that a guardian, who obtains money or other property of his ward for the first time after the relation of guardianship has terminated, takes such money or property as guardian, so as to be chargeable with it in his official capacity. His office and trust as guardian is at an end, except for the mere purposes of accounting and settlement. If he afterwards uses the influence which he has acquired over his ward so as to get into his hands other moneys or property, the transaction will be set aside, at the instance of the ward, and the guardian will, in equity, be charged in respect thereto as trustee of his ward, but such trust will necessarily be personal and not official. A court of equity will compel him to restore it to his ward, but as guardian he can not be charged with it.

While the decisions on this subject are not altogether harmonious, we think the weight of authority supports the views we have here expressed. In *Shelton* v. *Smith*, 8 Baxter, 82, on bill filed by a ward after becoming of age, against the guardian and the sureties on the guardian's bond, for an accounting and a decree for the payment of the moneys unaccounted for, it was held that a certain sum of money received by the guardian after the majority of her ward, was not received

while she was guardian, and that the sureties on her bond could not be held responsible for it.

In *Bell* v. *Towson*, 4 Watts & Serg. 557, an attempt was made to charge the estate of a deceased guardian with liability for property alleged to have been delivered to the guardian after his ward became of age, or at least after the guardian-ship was terminated by the marriage of the ward. While holding that there was no satisfactory evidence that said prop-erty was received by the guardian as alleged, the court, on the question of the liability of the guardian, if it were shown that it had been received, says : "Sarah (the ward) was of age, or at all events was married, in 1816, and her husband had a right to this money. Any money received, if any could be received after this, was received, not as guardian, but to be paid over; he could have been sued for it in a court of law, and was barred in six years."

In *Merrells* v. *Phelps*, 34 Conn. 109, a guardian, after hav-ing received $40 belonging to his ward, was removed by the court. He appealed from the order removing him, but sub-sequently withdrew his appeal. Afterward, professing to be guardian, he collected $100 due his ward. Said guardian not having accounted for either sum, the ward, on becoming of age, brought suit against the guardian and his surety on his official bond for the recovery of both sums of money, but the court held that, as to the sum of $100, there was no liability on the bond, as it was received by the principal after he had legally ceased to be guardian.

In *Hinckley* v. *Harriman*, 45 Mich. 343, it was held that money devised to a ward, to be paid over to her when she came of age, but improperly paid over to her guardian while she was still a minor, was not received by him as guardian, because he had no business with it, and therefore that he was not liable for it on his bond. Upon very similar states of facts the same rule was laid down in *Henderson* v. *The State*, 61 Md. 471, and *Allen* v. *Crossland*, 2 Rich. Eq. 68.

In *Crowell's Appeal*, 2 Watts, 295, it was held that trans-
actions between a guardian and his ward during his minority
are alone the subjects of settlement in the guardian's account,
and that goods sold and delivered to the ward after he arrived
at full age, are not the subjects of credit, but can only be
recovered by set-off against the balance on settlement of the
account.

But we are referred, as sustaining a contrary view, to the
following cases: *Mellish* v. *Mellish*, 1 Simons & Stuart, 138;
*Pyatt* v. *Pyatt*, 46 N. J. Eq. 285; *Armstrong* v. *Walkup*, 12
Gratt. 608, and *Bombeck* v. *Bombeck*, 18 Mo. App. 26. There
are in these cases certain views expressed in argument, which,
when considered apart from the questions which were actually
presented for decision, would seem to have something of the
force claimed for them by counsel here. But when viewed in
the light of the questions involved in the cases actually de-
cided, they have little if any application to the case now under
consideration.

In *Mellish* v. *Mellish*, Catherine Martha Mellish, having
been under the guardianship of her three uncles, on reaching
her majority, requested two of them to continue the manage-
ment of her affairs. One of the two consented to act, and he
subsequently brought a suit at law against her to recover
moneys advanced by him to her after her majority, and she
then filed her bill in chancery to restrain the suit at law, and
for an account of all the guardian's transactions, both before
and after her majority. The complainant having obtained a
common injunction for want of an answer, and an order hav-
ing been obtained to dissolve the injunction *nisi*, and the
defendants having answered, it was ordered that the injunc-
tion be continued in force, upon the complainant's paying into
court the entire amount of the money which the plaintiff in
the suit at law had advanced to her. The only question pre-
sented in the case was, as to the continuance in force of the
injunction, and that was ordered upon terms that the com-

plainant should pay into court all that could have been recovered in the suit at law. True, the Vice Chancellor, in deciding the case, said: "I consider that the unbroken continuance of the management of the property by the guardian, after the plaintiff had attained her age, is, in effect, a continuance of the guardianship as to the property; and that the same principle must be applied to this account as to accounts during the minority." But it will be observed that in this case there was no question as to the liability on the guardian's bond, the only question decided being in relation to the complainant's right to an injunction to restrain the prosecution of a suit at law. The proceeding was before a court of chancery which had general jurisdiction in all matters of trust, and so far as the remedy sought was concerned, it was practically a matter of indifference whether the trust was technically one arising out of the relation of guardian and ward, or out of a contract between parties *sui juris.* Furthermore, the administration after the ward attained her majority was in respect to precisely the same estate which was in possession of the guardian at and before the ward became of age, and did not involve the control of funds coming to the hands of the guardian for the first time after the ward's majority. The parties to both trusts, that arising during the ward's minority, and that arising afterwards, being substantially the same, there was no difficulty in blending the two together, and treating the two accounts as growing out of one continuing trust. If the proceeding had been before a court having jurisdiction to investigate one of these trusts and not the other, very different questions would manifestly have arisen.

In *Pyatt* v. *Pyatt,* the only question was as to the right of the guardian, who was also the mother of the ward, to be credited in her account with the board of her ward during the period of about six months which intervened between the date of her ward's majority and the filing of her account. Said credit was allowed, the court citing in support of its decision

the language appearing in *Mellish* v. *Mellish, supra,* and also relying largely upon the particular phraseology of the statute conferring jurisdiction on the orphan's court before which the account was rendered. Said statute, as it seems, invested that court "with full power and authority to hear and determine all controversies respecting the allowance of the accounts of executors, administrators, guardians and trustees under wills," and authorized it to issue process to compel such persons to account for the estate in their hands. It was held that said statute vested said courts, in respect to the accounts of guardians, etc., with the full powers of a court of chancery. It may be conceded that a guardian is entitled to credit upon her account for money received during the minority of her ward for indebtedness accruing from her ward to her after majority. Payments made after such majority are doubtless proper credits, since it is only by means of such payments or their equivalent that the guardian can be discharged. The application of post-majority indebtedness from the ward operates only upon what must be conceded to be a liability of the guardian as guardian, it being *pro tanto* a discharge. But very different questions arise where the guardian is sought to be charged as guardian with property and estate coming into his hands and under his control for the first time after his ward becomes of age. Those questions did not arise and were not decided in either of the two cases last cited.

In *Armstrong* v. *Walkup,* the estate of a deceased guardian was held properly chargeable for interest, hire and rents received by the guardian, after the majority of his wards for money, slaves and lands under his control during their minority, and which remained afterwards. From that rule we are not disposed to dissent. So long as the guardian retains in his possession and under his control the estate received by him during the minority of his ward, he must be deemed to retain it in the capacity of guardian, and to receive the rents, issues and profits thereof in the same capacity.

The case of *Bombeck* v. *Bombeck* was a proceeding against a guardian to compel him to account. He was charged with a sum of money received by him from the estate of his ward's deceased father in Colorado, but as the evidence was not preserved in the bill of exceptions, it could not be determined from the record whether said money was actually received by him before or after his ward became of age. It appeared, however, that said money was received as the result of a litigation undertaken and prosecuted by the guardian long before the ward's majority; and the court held that, even if received after his ward became of age, it was so far obtained under color of office as to estop the guardian to deny that he received it as guardian.

The four cases above commented upon are the authorities upon which counsel seem to rely as establishing the rule, that moneys received by a guardian, after the majority of his ward, under the circumstances shown by the evidence in this case, must be held to have been received by him as guardian, so as to bring the settlement of his accounts therefor within the jurisdiction of the Probate Court. We are of the opinion that the distinction between the questions decided in those cases and those arising in this is clear and radical, and that those cases do not tend to establish the conclusion sought to be drawn therefrom.

Assuming as true the fact which the evidence tends to prove, viz., that most if not all the charges against the guardian in the post-majority account were for moneys which came into the possession and under the control of the guardian for the first time after his ward became of age, the question is whether such moneys are to be deemed to have been received by him in his official capacity, so as to give the Probate Court jurisdiction to call him to account in respect thereto. At the time they were received the guardianship had expired, and the trust was no longer in existence except for the purposes of accounting and settlement. The ward having become *sui juris*, it was

competent for him and his late guardian to enter into any new dealings they might see fit. But their doing so could bring no new funds within the purview of the guardianship relation, at least, so as to effect the liability of the sureties on the guardian's bond. Whether these subsequent transactions between the guardian and his late ward established between them the relation merely of debtor and creditor, or the more onerous relation of trustee and beneficiary, is unimportant here. If the guardian became a trustee for his late ward, the proper tribunals are open to the beneficiary for the enforcement of the trust. The Probate Court was authorized to deal only with the guardian's accounts in his official capacity as guardian.

The jurisdiction of Probate Courts is fixed by section 20, article 6, of the Constitution, and by the act to establish Probate Courts, approved April 27, 1877, passed in pursuance thereof. Said section of the Constitution empowered the General Assembly to provide for the establishment of Probate Courts in each county having a population of fifty thousand, and provided that, "said courts, when established, shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators and settlement of their accounts," etc. The act of April 27, 1877, in providing for the establishment of Probate Courts, conferred jurisdiction on said courts in the exact language of the Constitution. So far then as the jurisdiction of said courts relates to the subject of guardianship, it is conferred in these words: "Shall have original jurisdiction of the appointment of guardians and the settlement of their accounts." It will thus be seen that this jurisdiction is limited to the specific subject of the settlement of guardians' accounts. While said courts may, within the limits of the jurisdiction thus conferred, exercise chancery powers, they are not given general chancery jurisdiction, even over the affairs of persons who may happen to hold the office of guardian. Doubtless they may, in settling guardians' accounts, charge

a guardian with any sum of money with which, as guardian, he is properly chargeable, and give him any credit to which, as guardian, he is entitled. But they can not settle all equities between the guardian and his late ward, or adjust accounts or dealings which do not properly pertain to the guardianship.

"Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them; the question is, whether, in the case before a court, their action is judicial or extra-judicial; with or without the authority of law to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction; what shall be adjudged between the parties, and with which is the right of the case, is judicial action, by hearing and determining it." *State of Rhode Island* v. *State of Massachusetts,* 12 Pet. 657, 720.

If a court has jurisdiction of the subject-matter and the parties, it is altogether immaterial, where its judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been; its final order can not be regarded as a nullity, and can not therefore be collaterally impeached. On the other hand, if it has proceeded without jurisdiction, it is equally unimportant how technically correct and precisely certain, in point of form, the record may appear; its judgment is void to every intent and for every purpose, and it must be so declared in every court in which it is presented. In the one case the court is invested with power to determine the rights of the parties, and no irregularity or error in the execution of the power can prevent the judgment, while it stands unreversed, from disposing of such rights as fall within the legitimate scope of its adjudication; while in the other, its authority is wholly usurped, and its judgments and orders the exercise of arbitrary power under the forms, but without the sanction, of law. *Sheldon* v. *Newton,* 3 Ohio St. 494; 12 Am. & Eng. Encyc. of Law, 311.

The rule thus laid down has been frequently recognized and affirmed by this court. Thus, in *Kenney* v. *Greer*, 13 Ill. 432, it was said: "No principle is clearer than, if the court transcends the limits which the law has prescribed for it, and assumes to act where it has no jurisdiction, its decisions will be utterly void, and entitled to no consideration, either as evidence or otherwise; and most emphatically is this so in reference to the decisions of a court of limited jurisdiction. * * * There is some difficulty in determining whether a court has or has not jurisdiction in a particular case; but, that once determined, the consequences that are to flow from the decision are well understood, and the want of jurisdiction being established, the proceedings of such courts are absolute nullities, except so far as they may, under some circumstances, be resorted to as a protection to an officer executing their process." To the same effect see, *Swiggart* v. *Harber*, 4 Scam. 364; *Buckmaster* v. *Carlin*, 3 id. 104; *Hernandez* v. *Drake*, 81 Ill. 34; *Munroe* v. *The People*, 102 id. 406.

That Probate Courts are courts of limited jurisdiction can not be disputed, but while acting within the scope of their constitutional and statutory authority, they are not, as we have frequently held in respect to County Courts exercising the same jurisdiction, courts of inferior as contradistinguished from courts of superior jurisdiction. This, however, only goes to the question of the presumptions which must obtain in favor of their jurisdiction, and the mode by which want of it must be shown. A court of superior jurisdiction, proceeding within the general scope of its powers, is presumed, in a collateral proceeding, to have had jurisdiction of the cause, until the contrary appears, but the facts which give an inferior court jurisdiction must appear on its record. 12 Am. & Eng. Encyc. of Law, 270, 274. But if the jurisdiction of the court, or the want of it, appears on the face of the proceeding, the result is the same whether the court ranks as a court of superior or of inferior jurisdiction. The rule also seems to be

well sustained by authority, that the presumption of the regularity of the proceedings of a court of superior jurisdiction is conclusive, as against collateral attack, unless the want of jurisdiction is shown on the face of the record. Ibid. 265, note 1.

In the present case, if we treat the re-statement of the guardian's account as a part of the record of the Probate Court, as we clearly must, the want of jurisdiction of said court, if it appears at all, appears on the face of said record. We are of the opinion that the re-statement of the guardian's account not only tends to show that the Probate Court undertook to settle accounts growing out of post-majority transactions in respect to which it had no jurisdiction, but that it is susceptible of no other interpretation. Said statement consists of two entirely separate accounts, one embracing transactions prior and up to the date of the ward's majority, and showing the state of the guardian's accounts at that date. The other relates wholly to subsequent transactions, and the charges against the guardian appearing therein are all for moneys which came into his hands after his ward became of age, and after his office of guardian had terminated. The *prima facie* presumption as to all these sums of money would be, that they were received by the guardian in his private and not in his official capacity. Doubtless if they were received by him as the rents, issues or profits of the estate already in his hands, he would be chargeable with them as guardian, notwithstanding the termination of his office. But as to $33,700 of the money so charged, the possibility of their being the rents, issues or profits of the ward's estate in the guardian's hands, or interest on the ward's money invested by the guardian is directly negatived. As to $21,700 of this money the charge is for real estate of the ward sold, and as to $12,000, for money borrowed. Clearly these were funds with which the guardian, as guardian, had nothing to do, and the Probate Court, by undertaking to settle the guardian's accounts

in 'relation thereto, assumed to adjudicate upon a matter over which it had no jurisdiction, and the want of jurisdiction is shown affirmatively on the face of the record.

It does not follow that the order of said court is totally void. The account in relation to transactions prior to the ward's majority was clearly within the jurisdiction of the court, and as that account is stated separately, and is therefore separable and distinguishable from the post-majority transactions, the order of the court, so far as it relates to that account, is valid, but as to the residue found due, it is without jurisdiction and void.

The remaining question arises upon the decision of the Circuit Court sustaining a demurrer to the defendant's fourth plea. That plea alleged, in substance, that after the execution of said guardian's bond by the defendant, as surety, and after Sexton, the ward, had become of age, and before Curtis, the guardian, had rendered his account in said Probate Court, said Curtis and Sexton entered into a secret agreement, without the knowledge or consent of the defendant, by means of which the funds and estate of said Sexton in the hands of said Curtis, as guardian, and belonging to said Sexton, were withdrawn from the guardianship, and were, by the mutual agreement of said Curtis and Sexton invested in their private business, and thereby became lost, whereby the defendant ceased to be a surety for said funds so held by said Curtis as such guardian, and became from thenceforth wholly released and discharged from any and all liability as surety upon said bond.

It is a general rule, that any agreement between the creditor and the principal, which varies essentially the terms of the contract by which the surety is bound, without the consent of the surety, will release the surety from liability. 2 Brandt on Suretyship, (2d Ed.) sec. 378. And if the duties which the principal is to perform are varied by agreement between the principal and obligee, after the surety for the conduct

of the principal has become bound, such surety will generally be thereby discharged. Ibid. sec. 393. So also, any dealings with the principal by the creditor, which amount to a departure from the contract by which the surety is bound, and which by possibility might materially vary or enlarge the latter's liability, without his consent, generally operate as a discharge of the surety. Ibid. sec. 397.

Among the legal duties of the guardian for the performance of which the defendant, by executing the guardian's bond, became surety, was that of accounting to his ward when the latter became of age, and of surrendering and delivering over to his ward such property and estate as should then be in his custody and possession, as guardian. An agreement between the guardian and ward that such property and estate, instead of being delivered over to the ward, might be retained by the guardian and used in his business, or used in the joint business of the guardian and ward, would clearly be such a modification of or departure from the legal duty for the performance of which the defendant had become surety, as to be sufficient, upon the principles above set forth, if valid and binding on the ward, to discharge the defendant from his obligation as surety. It would constitute a broad and palpable change in the obligations of the principal, by giving him the right to retain and use, and subject to the hazards of loss in a business enterprise, the funds and property which by the condition of his bond, he had obligated himself to deliver over to his ward at the termination of the guardianship.

Sexton, at the time of the agreement between him and Curtis alleged in said plea, and at the time his estate was embarked in business in pursuance of said agreement and lost, was of full age and therefore *sui juris*. Said agreement was not void, but at most only voidable at his instance. True, as between the parties to it, it was presumptively fraudulent. Having been entered into while the ward's property was still in his guardian's hands, and while dependence

15—146 ILL.

on one side and influence on the other presumptively continued, the burden would no doubt rest heavily on the guardian, in any controversy between him and his ward involving its validity, to prove all circumstances of knowledge, free consent, good faith, and absence of influence, to overcome the *prima facie* presumption that it was fraudulent.    2 Pomeroy's Equity Juris. sec. 961.   Doubtless if the guardian were setting up such agreement as against his ward, he would be compelled, in the first instance, to allege and prove all those circumstances of good faith, absence of influence, free consent, etc., necessary to render the agreement valid.    Where, however, such agreement is sought to be availed of by one not a party to it, as, in this case, by the surety on the guardian's bond, we think a different rule applies.    He is a stranger to the contract, and presumably not in a position to be able to establish affirmatively the circumstances under which it was entered into, or whether the guardian has exhibited the *uberrima fides* which must be shown in order to render his dealings with his ward valid and binding.    We are of the opinion that, as to him, the invalidity of such agreement is matter to be set up by the other side by way of replication.    We are of the opinion, therefore, that the demurrer to said fourth plea should have been overruled, and that the plaintiff should have been left to the necessity of setting up the circumstances which would render said agreement invalid, as against the ward, by an affirmative pleading.

For the reasons above stated, the judgment of the Appellate Court reversing the judgment of the Circuit Court will be affirmed, but the Appellate Court erred in refusing to remand the cause to the Circuit Court for further proceedings, and in that respect its judgment will be modified, and the cause will be remanded to the Circuit Court.

*Judgment reversed.*