JOHN F. McCARTNEY, Trustee, *et al.*

*v.*

THOMAS S. RIDGWAY *et al.*

*Filed at Ottawa October 11, 1895—Rehearing denied March 13, 1896.*

160  129
174  525
75a  511

160  129
182  297

160  129
184  519

160  129
205  ¹270
106a¹¹217
109a¹¹494

1. GIFT—*equity will not aid in perfecting an unexecuted gift.* A court of equity will not aid a mere volunteer to carry into effect an imperfect gift or executory trust.

2. SAME—*what is necessary to complete a gift inter vivos—revocation.* To constitute a valid gift *inter vivos*, possession and title must pass to and vest in the donee, or in a trustee for the donee. Anything which remains to be done to complete the gift cannot be enforced, and the gift, while so incomplete, may be revoked.

3. SAME—*may be revoked before conveyance is made.* A gift of a legal estate capable of legal conveyance is revocable at any time before conveyance is made.

4. TRUSTS—*voluntary trust is irrevocable when perfectly created.* A voluntary trust upon a meritorious consideration, which has been perfectly created, is irrevocable, and may be enforced in equity.*

5. SAME—*executory trust defined.* An executory trust is one which is not fully and finally declared, but requires some other act or acts in order to perfect it and carry out the intention of the settlor.

6. SAME—*executed trust defined.* An executed trust is one fully and finally declared by the person creating it, so that nothing further remains to be done in order to make it effective.

7. SAME—*instance of trust which is voluntary and executory.* An agreement between the devisees of lands, providing for the selection of a trustee by the parties or an appointment by the judge, and that the lands shall be transferred to such trustee by a proper and suitable conveyance, to hold a portion thereof for the benefit of the sisters of such devisees, with remainder to their children, no consideration moving from such children, is both voluntary and executory,—especially where, by its terms, it is impossible to tell what lands will go into the trust estate.

8. SAME—*intention as to mode of settlement controls.* A voluntary settlement intended to be effectuated by a certain mode will not be given effect by the court by applying a different mode.

9. SAME—*when voluntary settlement will not operate as a declaration of trust.* A voluntary settlement in trust, providing that it shall take

---

*The power to revoke or set aside a voluntary trust or settlement is the subject of annotation to *Ewing* v. *Jones*, (Ind.) 15 L. R. A. 75, while the effect of mistake, fraud, etc., as a ground for relief from a voluntary trust, is shown in *Ewing* v. *Wilson*, (Ind.) 19 L. R. A. 767.

effect by conveyance, will not be held to operate and take effect as a declaration of trust.

10. SAME—*when agreement to convey does not create relation of vendor and purchaser.*   An agreement between devisees of land to convey a portion thereof to a trustee to be appointed, for the benefit of their sisters for life, with remainder to the latter's children, does not create a trust for the benefit of the remainder-men, on the ground that in equity vendors are trustees of the land for the purchasers, where there is no consideration as between such remainder-men and the signers of the agreement.

11. PRINCIPAL AND SURETY—*general rule as to what will release a surety.*   It is a general rule that any agreement between the principal and the party secured, essentially varying the terms of a contract by which a surety is bound, without the latter's consent, will release him from responsibility.

12. SAME—*particular facts held to release sureties.*   The sureties upon the bond of a trustee, under an agreement that he shall sell and convert lands to be conveyed to him, as soon as convenient, without sacrifice, and invest the money and pay over the interest, with authority to make public or private sale, for cash or on credit, as he may deem best, except that the consent of four persons is required to a private sale, are released by a subsequent agreement by which the trustee can make no public sale for a year and no private sale without the consent of seven persons, is deprived of all discretion as to the sales, and by which his duties are changed and his responsibilities increased.

*Ridgway* v. *McCartney,* 57 Ill. App. 453, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is a bill filed on February 26, 1890, by Cornelia Peeples, a minor, by her next friend, against Thomas R. Reid of Gallatin county, Illinois, administrator of the estate of George H. Potter, deceased, who died intestate on September 30, 1889, and who, in his lifetime, was a trustee under the agreements hereinafter set forth; John F. McCartney of Massac county, appointed on October 31, 1889, as successor in trust to said Potter; the widow and children and grandchildren hereinafter named of

Orval Pool, deceased; Thomas S. Ridgway, David Reid, Robert Reid, Henry O. Docker and John M. Peeples, Jr., sureties upon the bond of said Potter, trustee, the said Henry O. Docker and John M. Peeples, Jr., being husbands of two of the daughters of said Orval Pool; and Harriet M. Peeples executrix and Thomas S. Ridgway executor of the will of John M. Peeples, Sr., or J. McKee Peeples, deceased, who died testate on December 22, 1878, and who, in his lifetime, was also one of the sureties upon the bond of said trustee. The bill charges, in general terms, that the trustee, George H. Potter, was guilty of negligence and mismanagement in his administration of the trust estate, and prays that an accounting be had, and that the amount of the liability of such of the defendants as are liable may be ascertained and ordered to be paid over to the successor in trust of said Potter.

It appears from the allegations of the bill and the evidence in the case, that Orval Pool of Gallatin county died testate on June 30, 1871, leaving him surviving his widow, Madeline Pool, and four children: one son, Marshall M. Pool, and three married daughters, to-wit: Mary Pool Docker, wife of Henry O. Docker, Augusta M. Pool Townshend, wife of Richard W. Townshend since deceased, and Ellen Pool Peeples, wife of John M. Peeples, Jr. These four children were the only heirs-at-law of Orval Pool. At the death of Orval Pool, his daughter, Mrs. Docker, had four children, William, Guy, Henry and Daisy, and, since his death, she has had one son, George, born November 19, 1874. At the death of said Orval, his daughter, Mrs. Peeples, had one child, Clarence, and, since his death, has had one daughter, the complainant, Cornelia, born November 11, 1875.

The bill was answered by all the adult defendants, except the widow, Madeline Pool, and the son, Marshall M. Pool, against whom defaults were entered, and by the infant defendants through their guardians ad litem. A cross-bill was filed by Thomas R. Reid, administrator

of Potter's estate; and a cross-bill was also filed by Mc-
Cartney, the successor in trust, and Ellen Pool Peeples
and Mary Pool Docker.    Several petitions were also filed
by several of the parties.    These cross-bills and peti-
tions were answered.    A reference was taken to a master
in chancery who made an elaborate report upon the issues
involved.    The cause was heard upon exceptions to the
master's report.

On April 2, 1894, the circuit court rendered a decree
against the sureties on the bond of George H. Potter,
trustee, requiring them to pay to John F. McCartney as
trustee succeeding Potter, who died insolvent, the sum
of $19,795.24 with costs.    Said sureties, except John M.
Peeples, Jr., and Henry O. Docker, to-wit:    Thomas S.
Ridgway, executor, and Harriet Peeples, executrix of the
estate of John McKee Peeples, deceased, and Thomas S.
Ridgway, Robert Reid and David Reid, took an appeal
to the Appellate Court.    The Appellate Court reversed
the decree of the circuit court, and dismissed the bill
as to the appellants there, who are the appellees here,
to-wit:    the executor and executrix of the estate of John
McKee Peeples, deceased, and Ridgway and the Reids.
The present appeal is prosecuted from the judgment of
the Appellate Court by John F. McCartney, trustee, Ellen
P. Peeples and Mary P. Docker.

The estate of Orval Pool is alleged in the bill to have
been worth, at the time of his death, about $400,000.00.
By his will, he devised lands worth about $9041.33 to his
daughters, Mrs. Docker and Mrs. Peeples, for life with
remainder over to their children, and gave all the rest of
his estate, real and personal, to his son, M. M. Pool, and
his daughter, Mrs. Townshend.    Mrs. Docker and Mrs.
Peeples claimed that the will was void, and demanded
from the two other devisees enough of the estate to
equalize the shares of the four.    M. M. Pool and Mrs.
Townshend insisted that the will was valid, but pro-

posed a settlement, and the following agreement, dated November 2, 1871, was entered into, to-wit:

"It is agreed between the parties hereto that the estate of Orval Pool, deceased, shall be divided upon the following basis, to-wit:

"1. Equal division, as near as may be, of the entire estate, real and personal, of which Orval Pool died seized and possessed, between the four children of said Orval Pool, to-wit: Marshall M. Pool, Augusta M. Pool Townshend, Mary Pool Docker and Ellen Pool Peeples. The shares of the said Mary and Ellen shall be limited to them during their lifetime, and at their decease to descend to their children or descendants of children; and in case of the death of said Mary or Ellen, or both, so dying without children or descendants of children, then the share of said Mary and Ellen, or both, so dying without children or descendants of children, shall go in equal shares to the children of said Orval Pool, deceased, and their heirs. The lands and personalty heretofore devised to the said Mary and Ellen by the will of Orval Pool, deceased, are to be taken into consideration in equalizing the division of said estate, and the same to be deducted from the shares of said Mary and Ellen.

"2. The interest of the said Mary Pool Docker and Ellen Pool Peeples in the moneys, personal property and proceeds of real estate that may be converted into money as hereinafter provided, shall, within a reasonable time, by a proper and suitable conveyance or conveyances, be conveyed and transferred to some suitable and responsible trustee, whose duty it shall be to keep the principal invested in United States interest-bearing bonds, or in some other profitable manner, and pay semi-annually the accumulations and interest thereon to the said Mary Pool Docker and Ellen Pool Peeples, or their order, respectively, during their natural lives, the principal to be kept intact and paid to their children or descendants of children as hereinbefore provided, subject to the rever-

sion aforesaid. A trustee shall be chosen by the parties to this agreement, whose duty it shall be to carry out and execute the trust hereby created, and shall enter into a good and sufficient bond, to be approved by the judge of the circuit court of Gallatin county, for the faithful performance of his duty as such trustee. Said bond shall be made payable to the parties to this agreement, for the use of all parties interested in the provisions of this agreement. And if the parties hereto can not agree upon the person who shall act as such trustee, then the said judge of said Gallatin circuit court shall appoint said trustee; and the said appointment and the approval of said bond may be made by him either in vacation or term time, as may be most convenient.

"3. Marshall M. Pool and Augusta M. Pool Townshend shall retain thirteen hundred and ten (1310) shares of the stock of the Gallatin National Bank, and four hundred (400) shares of the said stock shall be conveyed to the trustee aforesaid, for the use of the said Mary Pool Docker and Ellen Pool Peeples, subject to the limitations and conditions aforesaid, the interest of the said Mary Pool Docker and Ellen Pool Peeples in said bank stock to be equalized with the interest of the said Marshall M. Pool and Augusta M. Pool Townshend in said stock, as hereinafter provided.

"4. The trustee herein provided for shall have power, and it is made his duty, to sell and convert into money, as soon as the same can be conveniently done without sacrifice, so much of said lands and real estate, (except the homestead, with the lands adjoining thereto, and real estate in Shawneetown,) as may be necessary to equalize the interest of the said Mary Pool Docker and Ellen Pool Peeples, with the interest of the said Marshall M. Pool and Augusta M. Pool Townshend in the shares of said bank stock; which said sum of money so to be first raised shall be invested, and the interest thereon paid over, in the manner and upon the conditions and subject to the

limitations as hereinbefore provided; and provided further, if the proceeds of the sale of said lands shall not be sufficient to equalize the interest aforesaid in said bank stock, then the said Marshall M. Pool and Augusta M. Pool Townshend are to pay the deficit in money to the said trustee, for the use of the said Mary Pool Docker and Ellen Pool Peeples, to be invested by him under the conditions and limitations aforesaid; and provided further, that until said real estate shall be converted by said trustee for the purpose above mentioned, it shall be the duty of said Marshall M. Pool and Augusta M. Pool Townshend to account for and pay over to said trustee one-half of the net rents and profits of the above mentioned real estate for the use of Mary Pool Docker and Ellen Pool Peeples; and provided further, that the said Marshall M. Pool and his wife, and the said Augusta M. Pool Townshend and her husband, shall, on the request of the said trustee, or any purchaser from him, join with the said trustee in all necessary deeds and conveyances, for the purpose of fully and completely assuring the title to the lands to be sold by him, as aforesaid; and provided further, that after the interest of the said Mary Pool Docker and Ellen Pool Peeples in the bank stock shall be made equal, as above provided, the residue of said lands shall be held by the said Marshall M. Pool and Augusta M. Pool Townshend, subject to the following trusts, to-wit: to pay to the said Mary Pool Docker and Ellen Pool Peeples, respectively, one-fourth of the net rents, issues and profits thereof, until the same shall be conveyed by them to the trustee as herein next provided; secondly, to convey one undivided half thereof, whenever requested by the said Mary Pool Docker and Ellen Pool Peeples, to the trustee hereinbefore provided for, who shall hold the same for their use during their lives, as aforesaid, provided that whenever said lands, or any portion of them, shall become unprofitable, or the value thereof can be more profitably invested, it shall become

the duty of said trustee, upon the request of the said Mary Pool Docker and Ellen Pool Peeples, to convert the same into money and invest the proceeds as hereinbefore provided; and provided further, the words 'residue of said lands,' as last above used, shall be held and understood to include the said home farm or homestead, together with the farms and lands adjoining the same, as well also as the lots and real estate in said city of Shawneetown excepted in the first part of this paragraph. It is further understood and provided, that said trustee, for the purpose of equalizing the interest of the parties in the shares of the bank stock, as hereinbefore provided, may sell and dispose of the lands and real estate subject to sale and disposition for that purpose, either at public or private sale, either for cash in hand or upon a credit, as he may deem best, provided that in case of public sale a notice of the time, place and terms of sale shall be published in one or more weekly newspapers published in the county where the lands offered for sale lie, at least four weeks next before the time of such sale, with a like notice posted upon the court house door and three other of the most public places in the county where the sale is had and lands lie, provided that the failure to post up the last mentioned notices shall not vitiate any sale made by said trustee when the same shall have been advertised in some newspaper or newspapers, as above provided.

"5. And provided further, that should there be no such newspapers or newspaper in the county where said lands or any part thereof may lie, and where it is sought to sell the same, then it shall be sufficient, as to such lands, to post up written or printed notices, as above provided; and provided further, that all public sales shall be at the court house door, and no lands shall be sold outside of the county in which the same shall lie; and provided further, that in case of sale upon time, a longer credit shall not be given, in any case, than one year, unless by and with the written consent of all the parties to this

agreement, and the purchaser in every such sale shall give a note, with one or more solvent sureties thereto, for the amount of the unpaid purchase money, together with a mortgage on the premises to secure prompt payment of said note and all interest thereon. The note, in all such cases, shall be made to bear interest from date, at the rate of ten per cent per annum until paid, provided that when the purchaser at any such sale shall pay as much as one-third of the purchase money in hand, then no personal security shall be required, unless the said trustee, for good reasons, shall think proper to do so; and provided further, that said trustee shall make no private sale, under the authority above granted, until he shall have first obtained the written consent of said Marshall M. Pool, Augusta M. Pool Townshend, Mary Pool Docker and Ellen Pool Peeples; and it shall be the duty of said trustee, in all cases of public sale, to furnish, within a reasonable time before said sale, to each of the parties hereto, a copy of the notice thereof, provided the failure to furnish a copy of such notice shall not vitiate the title of any purchaser at such sale.

"6. A committee of three persons is hereby constituted, whose duty it shall be to fix and determine the cash value of the lands and real estate bequeathed to the said Mary Pool Docker and Ellen Pool Peeples by the said Orval Pool, deceased, and the amount, when so ascertained, shall be charged to them, respectively, by way of equalizing their interest with that of the said Marshall M. Pool and Augusta M. Pool Townshend in the shares in the bank stock aforesaid. In the event that the parties hereto cannot agree among themselves as to who shall constitute said committee, then the said Marshall M. Pool and Augusta M. Pool Townshend shall select one of said committee, and the said Mary Pool Docker and Ellen Pool Peeples shall select another, and the two so chosen shall select the third; and said committee, before proceeding to the discharge of their duties,

shall take and subscribe an oath, to be administered by some person authorized by law to administer oaths, to the effect that they will, to the best of their ability, skill and understanding, faithfully, fairly and without favor or partiality, ascertain, fix and report the cash value of the lands in question, and for this purpose that they will use all practical and reasonable means within their power to arrive at a true and correct conclusion in fixing the value of said lands—said committee to ascertain and report the value of said lands as soon as practicable.

"7. And the undersigned, Madeline Pool, widow of the said Orval Pool, deceased, in consideration of the promises, covenants and agreements by the other parties to this agreement, and the conditions, provisos and provisions herein contained, hereby waives, releases and absolutely renounces all right, title and interest that she may in anywise have in the real or personal estate of Orval Pool, her late husband, as his widow, devisee or otherwise, and hereby accepts in lieu thereof the provisions made for her in this agreement,—this concession on her part being made in the spirit of love and affection for her children, and with a sole view of securing good feeling and harmony between them and promoting their common welfare and happiness.

"8. In consideration of the renunciation by the said Madeline Pool of her entire interest in the estate of the said Orval Pool, deceased, it is hereby agreed and expressly stipulated by all the other parties to this instrument that she shall have and hold, during her natural life, the house now occupied by her and the twenty (20) acres of land upon which it is situated, together with the garden, orchard and outhouses, and all the conveniences, improvements and appurtenances thereon, being the same messuage and premises given to her by the will of said Orval Pool, deceased; provided, however, that if, at any time, she, the said Madeline Pool, should desire to abandon the above mentioned premises and acquire

a new residence in the city of Shawneetown, then a suitable lot of ground shall be procured in said city of Shawneetown, and a dwelling house, with the necessary fencing and outhouses, shall be erected thereon, equal in value, convenience, architecture, workmanship and finish to the house and premises above mentioned, and in the plan and construction of the same her wishes and taste shall in all things be respected and observed, and the cost of said lot of ground, dwelling house and other improvements made thereon shall be equally borne by her four children, Mary Pool Docker, Marshall M. Pool, Augusta M. Pool Townshend and Ellen Pool Peeples; which said lot of ground and buildings thereon, when so provided for her by the children, as aforesaid, shall be held by her in lieu of her homestead and ground now occupied by her, for and during her natural life, and a suitable and apt conveyance shall be made to her, limiting the same to her for life with remainder in fee to said trustee, in trust, to convey one undivided fourth part thereof absolutely, upon her death, to the said Marshall M. Pool and his heirs and another one-fourth part thereof to the said Augusta M. Pool Townshend and her heirs; and upon the further trust, to sell and convert the other undivided half of said lot and premises into money, when requested by the said Mary Pool Docker and Ellen Pool Peeples, and invest the proceeds thereof in manner, upon the conditions and subject to the limitations hereinbefore provided, and until such sale by said trustee it shall be the duty of said trustee to pay over to the said Mary Pool Docker and Ellen Pool Peeples, in equal parts, the rents, issues and profits of said undivided half of said lot and premises.

"9.  And the said Mary Pool Docker and the said Ellen Pool Peeples, for the consideration last aforesaid, hereby jointly and severally covenant, promise and agree to and with the said Madeline Pool, to pay to her as a personal annuity, at her residence, the sum of $1000 semi-annually,

for and during her natural life, the first payment to be made on the first day of December, 1871, the second payment to be made on the first day of June, 1872, and so on, every six months, for and during her natural life.

"10. And the said Marshall M. Pool and Augusta M. Pool Townshend, for the consideration last aforesaid, hereby jointly and severally covenant, promise and agree to and with the said Madeline Pool, to pay her semi-annually, as a personal annuity, at her residence, the sum of $1000 for and during her natural life, the first payment to be made on the first day of December, 1871, and the second on the first day of June, 1872, and so on, every six months thereafter, for and during her natural life, as aforesaid.

"11. And it is hereby expressly provided, that if the said Mary Pool Docker and Ellen Pool Peeples on the one hand, or the said Marshall M. Pool and Augusta M. Pool Townshend on the other, shall at any time fail to pay the annuities above mentioned, at the time and place above provided, or if the said Madeline Pool shall at any time hereafter, for good cause, become alarmed or apprehensive about the solvency of the above mentioned parties, or either of them, and the ultimate payment of said annuities or either of them, then it shall be the duty of the said parties about whom and whose annuity such apprehension exists, upon notice thereof and upon request of the said Madeline Pool, to make and file with the circuit clerk of Gallatin county, Illinois, a good and sufficient bond, payable to the said Madeline Pool, to be examined and approved by the circuit judge of said court, from time to time, in like manner as official bonds are now by law required to be approved, to secure the punctual and faithful payment of said annuity; and if the said parties shall fail to execute and file the same and give additional security whenever the said judge of said court shall require the same to be done, then it shall be lawful, and the circuit court of Gallatin county is hereby author-

ized, upon the application of said Madeline Pool, to enter a decree against such defaulting party or parties, requiring them to pay said annuity as herein provided, which decree shall be made a lien by said court upon the entire estate, both real and personal, of the party or parties being in default as aforesaid, and shall provide for the payment and satisfaction of said decree by execution, as in other cases.

"12. And Richard W. Townshend, husband of Augusta M. Pool Townshend, and Henry O. Docker, husband of Mary Pool Docker, and John M. Peeples, Jr., husband of Ellen Pool Peeples, each covenants with the parties hereto for the true and faithful performance of all the stipulations contained in this agreement of their respective wives.

"Witness our hands and seals this 2d day of November, 1871.

| | |
|---|---|
| Marshall M. Pool, | [seal.] |
| Augusta M. Pool Townshend, | [seal.] |
| Richard W. Townshend, | [seal.] |
| Madeline Pool, | [seal.] |
| Ellen Pool Peeples, | [seal.] |
| J. M. Peeples, Jr., | [seal.] |
| Henry O. Docker, | [seal.] |
| Mary P. Docker. | [seal.]" |

The parties being unable to agree upon a trustee, the judge of the circuit court of Gallatin county on December 26, 1871, appointed the said George H. Potter as such trustee. On the same day, to-wit: December 26, 1871, Potter gave a bond in the penal sum of $400,000.00, the terms and phraseology of which were substantially the same as those of the bond hereinafter set out, but the bond of December, 1871, was defective in certain respects not necessary to be mentioned here. (*Pool* v. *Potter*, 63 Ill. 533). Potter thereupon entered upon the duties of the trust and continued to act as trustee until his death. Afterwards, on account of the defects in the first bond, he

executed a new bond, dated May 15, 1872, which was accepted and approved by the judge of the circuit court of Gallatin county, and which is in the following words and figures, to-wit:

"*Know all men by these presents,* that we, George H. Potter, as principal, and Robert Reid, David Reid, John M. Peeples, Jr., Henry O. Docker, J. McKee Peeples and Thomas S. Ridgway are held and firmly bound unto Mary Pool Docker, Henry O. Docker, Marshall M. Pool, Richard W. Townshend, Augusta M. Pool Townshend, John M. Peeples, Jr., Ellen Pool Peeples and Madeline Pool for the use of all persons who may now and (or) hereafter have any rights or interests arising under or growing out of a certain instrument in writing hereinafter mentioned, in the penal sum of $400,000, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly, severally and firmly by these presents.

"Sealed with our seals and dated the 15th day of May, A. D. 1872.

"The condition of the above obligation is such, that whereas the above mentioned obligees did, on the second day of November, A. D. 1871, execute and deliver in duplicate, under their respective hands and seals, a certain instrument in writing providing for a division of the estate, both real and personal, of Orval Pool, deceased, and the appointment of a trustee to execute and carry into effect certain duties and trusts therein created and defined; and whereas, the above named George H. Potter has been duly appointed trustee under the provisions of said instrument in writing:

"Now, if the said George H. Potter shall faithfully and efficiently discharge said trust, and in good faith do and perform all such duties as may be now or hereafter imposed upon him by or otherwise arise under said instrument in writing and growing out of the trust therein created, and shall also well and truly account for and pay

over to the party or parties entitled thereto all moneys
and property which may come into his hands as such
trustee, at such times and in such manner as is provided
for in said instrument, and finally, when the objects of
said trust shall have been accomplished, make all such
transfers and conveyances of the trust property, and ac-
count for and pay over all moneys and effects that may
be in his possession or under his control or for which he
is in any manner liable as such trustee, to those then
entitled thereto under said instrument, then this obliga-
tion to be void, otherwise to remain in full force and
effect.   The word 'dollars,' in line 14, page 1, interlined
before signing.

GEORGE H. POTTER,    [seal.]
H. O. DOCKER,        [seal.]
DAVID REID,          [seal.]
ROBERT REID,         [seal.]
J. McKEE PEEPLES,    [seal.]
J. M. PEEPLES, Jr.,  [seal.]
THOS. S. RIDGWAY.    [seal.]"

Subsequently, on November 19, 1872, the parties sign-
ing the first agreement of November 2, 1871, and George
H. Potter, the trustee, executed a new agreement, which
is in the words and figures following, to-wit:

"This memorandum of an agreement, made and en-
tered into by and between the parties hereto this 19th
day of November, 1872, witnesseth and provides as fol-
lows:

"1. This agreement is made for the express purpose
of carrying into effect, and supplementary to, a certain
other agreement and indenture bearing date the second
day of November, 1871, and duly signed by Madeline
Pool, Mary P. Docker, Henry O. Docker, Augusta M. P.
Townshend, Richard W. Townshend, Ellen P. Peeples,
John M. Peeples, Jr., and Marshall M. Pool, and is not
intended and is not to be construed as conflicting with
said last mentioned agreement.

"2. Inasmuch as some of the parties hereto are of the opinion that a postponement of the sale of the lands belonging to the estate of Orval Pool, deceased, by the trustee at public auction, as provided for under said last mentioned agreement, would subserve the best interest of all persons having any right to or in said lands or the proceeds thereof, it is therefore agreed and hereby expressly provided that there shall be no such public sale of any of said lands for a period of one year from this date without the written consent of all the parties hereto.

"3. The trustee provided for in the agreement and indenture hereinbefore referred to may sell at private sale any and all of the lands and town lots belonging to said estate, except the homestead and farm adjoining thereto, at the best prices that can be obtained for the same, with the written consent of the parties hereto, and not otherwise.

"4. The said Marshall M. Pool, Mary P. Docker, Augusta M. P. Townshend, Ellen P. Peeples, and their respective husbands, hereby agree to give whatever aid they may be able, to secure the best prices that can be obtained for said lands and town lots to be sold by the trustee, as herein provided.

"5. That the said trustee is to perform only such services in procuring and completing said sales as the parties hereto may deem necessary.

"6. All suits or motions now pending against the executors of said estate, or between the parties hereto, in the Supreme or any other court, at the suit of any of the parties hereto, are to be dismissed without damages, and the costs and expense attending the case now in the Supreme Court, including attorneys' fees on both sides, are to be borne by and paid out of the funds belonging to said estate.

"7. It is also agreed and hereby provided that the said Marshall M. Pool, Augusta M. P. Townshend, and her husband, Richard W. Townshend, shall respectively pay

to said trustee, for the use of those entitled under said agreement, interest at the rate of six per cent per annum òn whatever excess of their shares of the personal estate, at the time so receiving them, they may have respectively received, exclusive of said bank stock, from the date they so received this sum.

"8. That the said Marshall M. Pool, Augusta M. P. Townshend, and Richard W. Townshend, her husband, are not to be held liable for any rents which have heretofore accrued except such as have actually come into their hands, but hereafter they shall be liable for the rents which they receive or might receive by the exercise of reasonable care and diligence.

"9. The taxes of 1871 are to be paid by the executors, and all thereafter, until the difference in the bank stock is equalized, are to be paid out of the proceeds of the sale of lands by the trustee.

"10. The value of each share of $100 of said bank stock is hereby fixed at $111, being the estimated value of said stock on the second day of November, 1871; and until the shares of said bank stock are equalized, as provided for in said original agreement, the parties hereto who have received an excess of said bank stock, after deducting the value of the lands willed, respectively, to Mary Pool Docker and Ellen Pool Peeples, as provided for under said original agreement so to be equalized, shall respectively pay, semi-annually, to said trustee, for the use of those entitled thereto under said original agreement, interest thereon at the rate of six per cent per annum, the interest to be computed from the second day of November, 1871, and be paid, as above provided, until said bank stock is equalized, as aforesaid.

"11. That inasmuch as it is apprehended by some of the parties hereto that some of the lands inventoried by the executors of said estate, and valued by the appraisers, under said original agreement, as land having been willed respectively to Mary Pool Docker and Ellen Pool Peeples,

did not belong to said Orval Pool at the time of his death, and hence no title passed by his will to some of his lands to said devisees, and whereas the entire value of all of said lands supposed to have passed by said will to the said Mary Pool Docker and Ellen Pool Peeples, including those the title to which is apprehended to be bad as well as those believed to be good, is for the present to be deducted from the excess of the estimated value of the bank stock, it is therefore hereby expressly provided that the said Marshall M. Pool, Augusta M. Pool Townshend and Richard W. Townshend shall refund and pay to the said trustee, for the use of those entitled under said original agreement, the estimated value of all such lands as have been taken by them, respectively, to which the said Orval Pool did not, at the time of his death, have a good title, or which have not now become good since his death, or which cannot be made good by resorting to a court of equity, together with interest thereon at the rate of six per cent per annum, to be computed, with half-yearly rests, from the second day of November, 1871; and it is hereby further provided that all costs and expenses incurred in perfecting, or attempting to perfect, the title to any of said lands, under the provisions of this article, are to be equally borne by the children of said Orval Pool, deceased, or paid out of funds belonging to said estate.

"12. The parties hereto hereby pledge themselves, each to the other, and hereby expressly bind themselves, that they will, in good faith, do all reasonably within their power to effect a final settlement between the said executors and said estate during the November term, 1872, of the county court. And it is hereby further agreed, that when such final settlement is had there shall be an equal division of the moneys and effects, exclusive of said bank stock, between the parties entitled thereto, as provided for under and in said original agreement, and the interest to be paid to those entitled, as provided for

under this agreement. And it is hereby expressly understood and agreed, that if, from any cause without the fault of said trustee or the said Mary Pool Docker, Ellen Pool Peeples, their respective agents and attorneys, said executors should refuse, neglect or be unable to make a final settlement as herein contemplated, then the said Marshall M. Pool, Augusta M. P. Townshend and the said Richard W. Townshend, on behalf of his said wife, hereby covenant and agree to pay to said trustee, under said original agreement, whatever they have received of said moneys and personal estate, as shown by the report of the said executors approved at the September term, 1872, of the county court, in excess of their respective shares of said moneys and personal estate actually received by them, as shown by said last mentioned report, exclusive of said bank stock, together with interest thereon, as hereinbefore provided, and the same, when so paid over to said trustee, to be held by him for the use of those entitled under said original agreement, provided that if there shall be a final settlement, as contemplated, at said November term of said county court, by said executors, and there is a complete division of said personal estate, as hereinbefore provided, then and in that case the said trustee is to receive, as part payment of said moneys and personal estate coming to him as trustee, such good notes, with accrued interest thereon, as may be in the hands of said executors and belonging to said estate.

"13. That by computation upon the basis fixed by article 10 hereof, the total value of the bank stock on the said second day of November, 1871, received by the said Marshall M. Pool and Augusta M. Pool Townshend, in excess of the amount of said bank stock received by the said Mary P. Docker and Ellen P. Peeples, is found to be and is hereby fixed at $...... And whereas, the parties hereto are desirous that the same shall be liquidated at as early a day as practicable, it is therefore hereby provided and made the duty of said trustee, at the date of

each sale of lands made by him under the provisions of this agreement and the original agreement to which this is a supplement, to credit the above mentioned indebtedness by one-half of the proceeds of such sale, and retain the other half of said proceeds, as such trustee, for the use of those entitled thereto under the provisions of said original agreement. The provisions of this article, however, are not to be construed as extending to so much of said proceeds of sales as may be required to be paid out for other purposes specified in this agreement, or to so much of said proceeds as are required to defray such expenses as are necessarily incurred in the execution of this trust.

"14. And it is hereby further provided that said trustee shall provide himself with a well-bound book, in which he shall record the particulars of every sale made by him as such trustee, in which such record so to be made out and kept by said trustee must appear the time of each sale, a description of the tract of land or lot sold, the amount for which it sold, the name of the purchaser, the terms of sale, what portion of the proceeds have been applied towards liquidating the indebtedness mentioned in article 13 hereof, and what portion kept by him in trust for those entitled under said original agreement, and what portion, if any, retained by him for defraying the necessary expenses of this trust; which book so to be procured and kept by said trustee shall be open to inspection at all reasonable hours to the parties hereto, their agents and attorneys.

"15. And the said trustee hereby agrees, and it is made his duty, to carry into effect and consummate any and every proposed sale and transfer of land or lots under the provisions of this agreement, whenever the parties hereto shall, in writing, request him to do so.

"*November 19, 1872.*"

After the execution of the second bond and the second agreement, controversies arose from time to time between

the parties thereto. Some of these controversies may be understood by reference to the following cases: *Pool* v. *Potter, supra; Potter* v. *Peeples,* 92 Ill. 430; *Pool* v. *Docker,* id. 501.

FRANK A. JOHNSON, for appellants :

By the contract of November 2, 1871, an equitable estate for life in one-fourth of the estate immediately passed to Mrs. Docker and Mrs. Peeples, respectively, and an equitable vested estate in remainder immediately passed to their children then living, subject only to be opened to let in after-born children to shares. *Hagan* v. *Varney,* 147 Ill. 281; *Legard* v. *Hodges,* 1 Ves. Jr. 478, and note; 2 Story's Eq. Jur. chap. 33, secs. 1231, 1212, 789, 980; *Collyer* v. *Fallon,* 1 Tur. & R. 469; *Powell* v. *Bailey,* 1 Ball & B. 50; *Chiller* v. *Chiller,* 2 Ves. 578; *Champion* v. *Brown,* 6 Johns. Ch. 402; *Morrison* v. *Brown,* 83 Ill. 562; Adams' Eq. 40; *Edgerton* v. *Brownlow,* 4 H. L. C. 210; 2 Pomeroy's Eq. 1001, and cases in notes; *Jones* v. *Throckmorton,* 57 Cal. 368; *Phipps* v. *Ackers,* 9 C. & F. 594; *Stanley* v. *Stanley,* 16 Ves. Jr. 507; Perry on Trusts, secs. 95, 100, 359; *Marvin* v. *Ledwith,* 111 Ill. 150.

When one enters into a contract with another upon good consideration, for the benefit of a third person, such third person may maintain an action at law for a breach of such contract. *Eddy* v. *Roberts,* 17 Ill. 505; *Lithographing Co.* v. *Kerting,* 107 id. 344; *Brown* v. *Strait,* 19 id. 88; *Nelson* v. *Bevans,* 58 id. 232; *Eggleston* v. *Buck,* 24 id. 262; *Bristow* v. *Lane,* 21 id. 194; *Beasley* v. *Webster,* 64 id. 458; *Steele* v. *Clark,* 77 id. 471.

A remainder is never held to be contingent when, consistently with the intention, it can be held to be vested, and an estate once vested will not be divested unless the intention clearly appears. *Doe* v. *Considine,* 6 Wall. 458; *Croxall* v. *Shererd,* 5 id. 268; *Duryea* v. *Duryea,* 85 Ill. 41.

In the bonds signed by the appellees as sureties they recite and acknowledge, in writing, that by the agreement

of 1871 therein referred to, a trust was "therein created." They are now estopped from making a claim that it was simply an agreement to create a trust at some future time. 2 Brandt on Suretyship, secs. 42-46.

The agreement of 1871 was not executory.   Perry on Trusts, sec. 359; *Potter* v. *Peeples*, 92 Ill. 430; 2 Pomeroy's Eq. Jur. sec. 1001; *Cushing* v. *Blake*, 30 N. J. Eq. 689; *Welsch* v. *Bank*, 94 Ill. 191.

The neglect to take proper measures, by which all opportunity for collecting the debt is lost, unless, perhaps, when amounting to fraud, (*Darson* v. *Lewis*, 23 L. J. Ch. 434,) will not affect the liability of the surety.   2 Am. & Eng. Ency. of Law, 465; *Conover* v. *Hill*, 76 Ill. 342; Brandt on Suretyship, sec. 141; *Brooks* v. *Brooks*, 12 G. & J. 306.

JOHN H. MULKEY, (of counsel,) also for appellants.

CHARLES F. BEACH, Jr., and S. P. SHOPE, also for appellants.

OLIVER & SHOWALTER, for appellees :

The maxim that equity treats that as done which ought to be done, applies only in favor of persons who have the right to have done the act in question,—who have the right to enforce the contract to make the trust.   1 Vaizey on Settlements, pp. 95, 143, 145.

It seems now to be settled, notwithstanding several conflicting *dicta* and decisions, that a gift to a wife or child is not treated by the court of chancery differently from a gift to a stranger.   3 Atk. 400; *Antrobus* v. *Smith*, 12 Ves. 39; *Holloway* v. *Headington*, 8 Sim. 324; *Dillon* v. *Coppin*, 4 M. & C. 647; *Breton's Estate*, 17 Ch. D. 416; *Moore* v. *Crofton*, 3 J. & L. 443; *Jeffreys* v. *Jeffreys*, C. & Ph. 138.

The common doctrine that an uncompleted gift cannot be completed and enforced by a court of chancery at the suit of the donee, is illustrated by the following cases: *Badgley* v. *Votrain*, 68 Ill. 25 ; *Padfield* v. *Padfield*, 68 id. 210; *Barnum* v. *Reed*, 136 id. 388; *Young* v. *Young*, 80 N. Y. 422.

There can be no "equitable" ground for liability on the bond of a surety.   *Trustees* v. *Otis*, 85 Ill. 181.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The original bill herein filed by one of the owners of the estate in remainder, and the cross-bill filed by the life tenants and the present trustee, seek to charge the administrator of the deceased trustee and the sureties on his bond with what is alleged to be due upon an accounting from the estate of said deceased trustee.   The only defendants below, who appealed from the decree of the circuit court, were the sureties upon said bond.

The bill here is not a bill to enforce either of the agreements set forth in the record; nor is this a controversy between the parties to those agreements as to the proper construction to be given to either of them.   The real dispute is between the remainder-men and the life tenants on one side, and the sureties upon the bond of the deceased trustee on the other side, as to whether such sureties should be held liable for what may be due from said trustee or his estate.   The question is, whether the trustee who was the principal in the bond, and the parties to the agreement, the performance of which was secured by the bond, entered into any agreement which so changed the duties and obligations of the trustee, or the terms of the trust imposed upon him, as to release the sureties from their liability upon the bond.

The bond, which was executed on May 15, 1871, recites that the obligees therein, to-wit: the widow, and son, and three daughters of Orval Pool, and the husbands of said daughters, did, on November 2, 1871, execute a certain instrument in writing, providing for a division of the estate of said Orval and the appointment of a trustee to execute and carry into effect certain duties and trusts *therein* created and defined, and that George H. Potter had been duly appointed trustee under the provisions of

said instrument in writing. The condition of the bond is, that Potter shall discharge the trust imposed by the agreement of November 2, 1871, and perform such duties "as may be now or hereafter imposed upon him by or otherwise arise" under said last named agreement, and pay over and account for all moneys and property coming to his hands as such trustee "at such times and in such manner as is provided for" in said agreement of 1871.

After the execution of the bond of May 15, 1871, to-wit: on November 19, 1872, the same parties who signed the agreement of November 2, 1871, to-wit: the widow, and son, and daughters of Orval Pool, and the husbands of the latter, together with Potter, the trustee, executed a new agreement. Thereafter Potter performed his duties as trustee, and managed the interests of the trust, under and in accordance with the provisions of the new agreement of November, 1872, or, if not wholly under the latter agreement, certainly under the latter agreement in connection with the agreement of November, 1871. Inasmuch as the obligations of the bond were based upon the agreement of 1871, it becomes important to inquire whether the new agreement of 1872 produced such changes in the duties and obligations of the trustee, or in the terms and conditions of the trust as fixed by the agreement of 1871, that the sureties can be said to have been released from their liability on the bond.

Whether or not such a change was wrought can only be determined by a comparison of the terms and conditions of the one agreement with those of the other. A preliminary question, however, arises as to the nature of the interests of the remainder-men mentioned in the agreement of 1871 thereunder, and whether the parties executing the agreement of 1872 had any power to change the agreement of 1871 so far as the latter agreement had reference to the children of Mary Pool Docker and Ellen Pool Peeples. The shares of said Mary and Ellen were to be limited to them during their lifetime and at their

decease to descend to their children, etc. The children or remainder-men did not sign either contract. It is not denied, that the widow and son and daughters and sons-in-law of Orval Pool, who signed the agreement of 1871, had the power to change it by a subsequent agreement so far as it affected themselves or their own interests; but it is claimed on the part of the appellants, that the parties so signing the agreement of 1871 could not change it so as to affect the interests of the remainder-men, and that, this being so, there was no change wrought by the agreement of 1872 which could release the liability of the sureties to the remainder-men. As a reason for the contention that the later contract did not change the earlier one so far as the interests of the remainder-men are concerned, it is urged that, by the contract of 1871, the children of Mrs. Docker and Mrs. Peeples were equitable owners of one-half of the estate subject to the life estates of their mothers, and had the right to have the trust created exactly as proposed in the contract of 1871, and to have the trustee's liability to them measured by that contract. On the part of the appellees it is claimed, that the agreement of 1871 created an incomplete, voluntary trust, and that, therefore, it was within the power of the signers of the agreement to change it by a subsequent one.

A court of equity will not aid a mere volunteer to carry into effect an imperfect gift, or an executory trust. But where a voluntary trust upon a meritorious consideration has been perfectly created, it is irrevocable and may be enforced in equity. Whether a trust has been perfectly created is largely a question of fact in each case. (27 Am. & Eng. Ency. of Law, pp. 11, 12; Perry on Trusts, sec. 99). Hence, it may be well to examine the terms of the agreement of 1871 with reference to the question whether it provides for an executed or an executory trust.

The will of Orval Pool, having devised certain lands worth about $9041.33 to his daughters, Mrs. Docker and Mrs. Peeples, for life with remainder over to their chil-

dren, vested the title to these lands in remainder in said children, and, of course, their interests in remainder therein could not be and were not affected by the agreements of 1871 and 1872, to which they were not parties. All the rest of the property having been devised to M. M. Pool and Mrs. Townshend, the title thereto was held by them when the agreement of 1871 was made. That agreement makes no declaration, that M. M. Pool and Mrs. Townshend hold such title for the benefit of their sisters or of the children of their sisters, nor does it transfer or convey any of the property of the estate to a trustee for their benefit. It is executory in its character. (*Pool v. Docker*, 92 Ill. 501). It names no trustee, but provides for the selection of one by the parties, and, in case of their failure to select, for the appointment of a trustee by a judge of the circuit court of Gallatin county. It further provides, that the interest of Mrs. Docker and Mrs. Peeples "in the moneys, personal property and proceeds of real estate that may be converted into money," as therein directed, "shall, within a reasonable time, by a proper and suitable conveyance or conveyances, be conveyed and transferred to" the trustee so to be appointed. Nothing is presently conveyed to the trustee, but thereafter, in the future, moneys, personal property and, not real estate, but the proceeds of real estate to be converted into money, are to be conveyed to the trustee. While it is true, that there was a good and valuable consideration for the agreement of 1871 as between the parties who signed it, so that it could be enforced in equity as between them, yet no consideration for that agreement moved from the children of Mrs. Docker and Mrs. Peeples. The provision therein made for them was consequently a gift, and not a present gift, but a gift which, the parties agreed among themselves, should be made thereafter.

So far as the land was concerned, the trust was indefinite and uncertain, and, not only so, but it was incomplete,

because it was impossible to tell, when the agreement of 1871 was made, what lands would go into the trust estate. The agreement shows that the estate of Orval Pool owned 1710 shares of bank stock, shown by the evidence to be worth $189,810.00, or $111.00 per share; that M. M. Pool and Mrs. Townshend were to retain 1310 shares, or $145,410.00, and 400 shares or $44,400.00 were to be conveyed to the trustee for the use of Mrs. Docker and Mrs. Peeples, the income to be paid to them and the principal to be kept for their children; and that the trustee was to sell and convert into money so much of the lands as might be necessary to equalize the interest of Mrs. Docker and Mrs. Peeples with the interest of M. M. Pool and Mrs. Townshend in the shares of said bank stock. M. M. Pool and Mrs. Townshend were to join the trustee in executing deeds to the purchasers of the lands. When sales enough should be made to raise the amount necessary to equalize the interests in the bank stock, M. M. Pool and Mrs. Townshend were to convey the residue of such lands to the trustee, whenever requested by Mrs. Docker and Mrs. Peeples; and the trustee was to hold them, or to sell them and invest the proceeds, as provided in the agreement. The agreement provides for no conveyance to the trustee of the lands to be sold. The title remained in M. M. Pool and Mrs. Townshend until sales enough were effected to accomplish the equalization; and the trustee was a mere agent to make the sales. (*Pool* v. *Potter*, 63 Ill. 533).

It is manifest that, by the terms of the agreement of 1871, the children or remainder-men were mere volunteers. The principle is well settled, that a court of equity will not lend its aid to establish a trust at the instance of mere volunteers. If the transaction, on which the voluntary trust is attempted to be established, is still executory or incomplete, the court will decline all interference in the matter. Where there is only a voluntary agreement for the creation of a trust, a court of equity will

not regard the agreement as binding so long as it remains executory.   An executory trust is one which is not fully and finally declared, but requires some other act or acts in order to perfect it and carry out the intention of the settlor, while an executed trust is one fully and finally declared by the person creating it, so that nothing further remains to be done in order to make it effective.   (*Clarke* v. *Lott,* 11 Ill. 105; *Badgley* v. *Votrain,* 68 id. 25; *Padfield* v. *Padfield,* id. 210; *Barnum* v. *Reed,* 136 id. 388; 27 Am. & Eng. Ency. of Law, p. 11).

Before an executed and fully created trust could arise under the agreement of 1871 in favor of the children of Mrs. Docker and Mrs. Peeples, it was necessary, that there should be transferred or conveyed to a trustee to be thereafter appointed money and personal property and the proceeds of sales of land thereafter to be made. To constitute a valid gift *inter vivos,* possession and title must pass to and vest in the donee, or in a trustee for the donee.   If anything remains to be done to complete the gift, what so remains to be done cannot be enforced, as it is based upon no consideration; and when the gift is thus incomplete, there is a *locus pœnitentiæ,* and the gift may be revoked.   Where the alleged gift is of a legal estate capable of legal conveyance, and no conveyance is made, the gift is revocable.   (*Barnum* v. *Reed, supra; Wadhams* v. *Gay,* 73 Ill. 415; 8 Am. & Eng. Ency. of Law, pp. 1313-1318; *Telford* v. *Patton,* 144 Ill. 611).   A gift *inter vivos* cannot be made to take effect in possession *in futuro;* nor will equity interpose to perfect a defective gift or voluntary settlement made without consideration; nor can equity convert an imperfect gift into a declaration of trust merely on account of that imperfection.   (*Young* v. *Young,* 80 N. Y. 422).

In order to render a voluntary settlement valid and effectual, the settlor must have done everything which, according to the nature of the property comprised in the settlement, it was necessary to do in order to transfer

the property and make the settlement binding upon him; and such a settlement may be effectual by transferring the property to the persons for whom he intends to provide, or by transferring it to a trustee for the purposes of the settlement, or by declaring that he himself holds it in trust for those purposes. If it is intended to effectuate the settlement by one of these modes, the court will not give effect to it by applying another of them. If it is intended that the settlement shall take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, because it would thereby convert an imperfect instrument into a perfect trust. Where the instrument contemplates that there shall be a transfer of the property to a trustee, the relation of trustee and *cestui que trust* does not arise until such transfer is made. Until then the person, for whose benefit the voluntary settlement is made, takes no estate in the property and cannot enforce the agreement to make the gift, or compel the alienation to the trustee. Before the alienation to the trustee, the gift is an imperfect one, and a court of equity will not interfere to complete it. (*Milroy* v. *Lord*, 4 DeG., F. & J. 264; *Bridge* v. *Bridge*, 16 Beav. 315; *Beech* v. *Keep*, 18 id. 285; *Colyear* v. *Countess of Mulgrave*, 2 Keen, 82; 1 Vaizy's Law of Settlements, pp. 93, 140, 143, 145; *Jeffreys* v. *Jeffries*, 1 Craig & Phil. 138; *In re D'Augiban*, L. R. 15 Ch. Div. 228).

Now, the evident purpose of the agreement of 1871 was, that the interest which was to go to the children should be settled upon them by a transfer of the property to a trustee, who was to hold it upon trust. A transfer to a trustee was that particular one of the three modes above specified, by which, under the agreement of 1871, the settlement upon the children was to be made effectual. It cannot be held, therefore, that it can be made effectual by construing the agreement as amounting to a declaration of trust by the signers of it. A complete voluntary trust is clearly distinguishable from a

voluntary contract to create a trust. We do not think, that it was the intention of M. M. Pool and Mrs. Townshend to constitute themselves trustees of the fund to be settled upon the remainder-men. Their intention was, that the trust should be vested in the trustee to be thereafter selected either by the parties or by a judge. Until the property was transferred to such trustee, the instrument, so far as the children were concerned, was an imperfect gift, or voluntary settlement without consideration, which the beneficiaries themselves, being mere volunteers, could not enforce against the settlors or signers of the agreement, and which the latter were at liberty to revoke or change. "When two persons, for valuable consideration between themselves, covenant to do some act for the benefit of a mere stranger, that stranger has not a right to enforce the covenant against the two, although each one might as against the other." (1 Vaizy's Law of Sett. p. 143). "Where the obligation to do what ought to be done is not an absolute duty, but only an obligation arising from contract, that which ought to be done is only treated as done in favor of some person entitled to enforce the contract against the person liable to perform it." (Id. p. 145). Here, any one of the signers of the agreement of 1871 could insist on the proposed transfer of the property to the trustee in order to make the proposed gift, but no right vested in the proposed remainder-men until such transfer was made. Whenever any part of the property was conveyed to the trustee, an equitable estate in remainder therein vested in the children, and, as to that, the power of the settlors to make a change by contract was gone. As to property not conveyed to the trustee, the parties were at liberty to make a new contract.

There is some proof tending to show, that the 400 shares of bank stock above mentioned were delivered to the trustee before the execution of the agreement of November 19, 1872. It does not appear, however, that

there was an actual transfer of the stock upon the books of the bank prior to that time. In *Milroy* v. *Lord, supra,* it was held, that, where bank shares were transferable only by entry in the books of the bank, and no such transfer was made to the trustee in a voluntary settlement like that here under consideration, the gift remained uncompleted and imperfect. But even if it be conceded, that the 400 shares came to the hands of the trustee by a proper transfer before the second agreement was made, we understand that no loss was sustained as to this stock, and that no default in relation thereto is embraced in the amount found against the sureties by the decree below.

We cannot subscribe to the theory, that the agreement of 1871 is to be regarded as creating the relation of vendor and vendee between the signers of that agreement, or some of them, and the proposed remainder-men, and that a relation of trust was thereby created upon the theory that, in equity, the vendors are trustees of the land for the purchasers and the vendees are trustees of the purchase money for the sellers. The doctrine thus invoked has no application here, for the reason, among other reasons, that a sale implies a consideration, whereas, here, there was no consideration as between either or any of the signers and the children.

It being established, that the parties to the agreement of 1871 had the power to change it by a new agreement, both as to their own interests and as to the interests therein proposed to be vested, through a trustee, in the children of Mrs. Docker and Mrs. Peeples, the question again recurs, whether the agreement of 1872 made such changes in that of 1871 as had the effect of releasing the sureties on the bond.

The undertaking of a surety is to receive a strict interpretation. (*Chicago and Alton Railroad Co.* v. *Higgins,* 58 Ill. 128). He is not to be held beyond the precise terms of his contract. His liability is *strictissimi juris* and can not be extended by construction. Where the term of an

officer is for a definite and fixed period, the surety is only liable for the faithful performance of his duties during that period. (*People* v. *Toomey*, 122 Ill. 308). The extent of his liability must be embraced in the obligation or contract. (*Phillips* v. *Singer Manf. Co.* 88 Ill. 305). If a creditor, by a valid and binding agreement, without the assent of the surety, gives further time for payment to the principal, the surety is discharged, both in law and equity, whether the surety is thereby actually damnified or not. (*Dodgson* v. *Henderson*, 113 Ill. 360). Where a party gives a bond with sureties conditioned for his faithful performance of a written contract, the sureties will not be liable for the default of their principal to perform any duty or obligation arising out of a contract not fairly within the provisions of the written contract which the bond was given to secure. (*Burlington Ins. Co.* v. *Johnson*, 120 Ill. 622). Sureties have a right to prescribe the terms and conditions upon which they will assume a responsibility, and no person has a right to change those terms. (*Ryan* v. *Trustees*, 14 Ill. 20). It is a general rule, that any agreement between the principal and the party secured, essentially varying the terms of the contract by which the surety is bound, without the consent of the surety, will release him from responsibility. (2 Brandt on Suretyship and Guar. sec. 378; *Gardiner* v. *Harback*, 21 Ill. 128; *Trotter* v. *Strong*, 63 id. 272; *United States* v. *Corwine*, 1 Bond, 339). If the duties, which the principal is to perform are varied by agreement between the principal and obligee, after the surety for the conduct of the principal has become bound, such surety will generally be thereby discharged. Any dealings between the principal and obligee, amounting to a departure from the contract by which the surety is bound, and materially varying or enlarging his liabilities without his consent, will generally operate to discharge him. The same result will follow, as a general thing, where the principal acts in another office or capacity from that designated in the contract of suretyship, or

where his responsibilities in the same office are increased. (Brandt on Suretyship and Guar. secs. 393, 397; *People* v. *Seelye*, 146 Ill. 189; 24 Am. & Eng. Ency. of Law, p. 759).

It is difficult to see how an application of these well settled principles to the facts of this case can lead to any other result than a discharge of the sureties upon Potter's bond.

By the agreement of 1871 it was made the duty of the trustee "to sell and convert into money as soon as the same can be conveniently done without sacrifice, so much of said lands and real estate," as may be necessary to equalize the interests already mentioned, and to invest the money raised by such sales and pay over the interest thereon, as therein directed, and subject to the conditions therein specified. He is thereby authorized to make such sales either at public or private sale, or for cash or on credit, "as he may deem best," subject to certain provisions as to giving notice. In case of sales on time, no credit is to be given for a longer time than one year except with the consent of the parties. Purchasers are to secure the purchase money by mortgages and notes drawing ten per cent interest, and, where the cash payment is less than one-third, the note is to have a surety. The trustee can make no private sale without the consent of M. M. Pool, Mrs. Townshend, Mrs. Docker and Mrs. Peeples. From these provisions it is manifest that, by the agreement of 1871, the trustee could exercise a reasonable degree of discretion in the matter of making sales both as to the time and mode of making them, and that the intention of the agreement was to make such sales, as would equalize the interests, as rapidly as could be done without sacrifice.

The agreement of 1872 provided, that the trustee should make no public sale of any of the lands for a period of one year from November 19, 1872, without the written consent of the parties to the agreement of 1872; and that he should make no private sales at any time

without the written consent of such parties; and that he should only perform such services in procuring and completing such sales as the parties thereto might deem necessary. By the second agreement the time, within which the trustee was required to make public sales, was necessarily extended, and he was robbed substantially of all right to exercise any judgment or discretion about any of the sales. By the first agreement he could make private sales with the consent of the son and three daughters of the testator; by the second, he could not make private sales without the consent of the son and three daughters and widow and three sons-in-law of the testator. By the first agreement he could make public sales as soon as could .be conveniently done without sacrifice; by the second, he could not make public sales for a year from November, 1872, without the consent of the seven persons last named; and, in fact, he could procure no sales, either public or private, except so far as said seven persons should deem necessary. The sureties contracted, that they would be liable for the judgment and skill of a trustee; they are sought to be held liable for transactions controlled entirely by the judgment and skill of seven persons acting independently of the trustee. By their bond they contracted, that the trustee would account for and pay over all moneys and property, which might come into his hands as such trustee "at such times and in such manner as is provided for in said instrument," that is to say, in the agreement of 1871. But the "times" and "manner" specified in the agreement of 1871 were materially altered by the agreement of 1872.

By the latter agreement, the duties of the trustee were changed, and his responsibilities were increased. These changes not only affected the character and duration of his duties, but the amount and kind of property of which he was to have the care, and the times when said property should come to his hands. We cannot stop to point out all these changes. They can be easily ascertained

by a study and comparison of the terms of the two agreements, as they are set out in the statement which precedes this opinion. The agreement of 1872 put it in the power of the seven persons above named to postpone the completion of the trust, to delay the transfer of the trust property to the possession and control of the trustee, and to hinder the trustee in his management of the trust. As a necessary result, sales and investments, which, under the first agreement, were to be accomplished within a conveniently reasonable time, were not effected for many years. The evidence shows, that it was not until 1886, fourteen years after the second agreement was made, that enough land had been sold to equalize the interests in the bank stock.

Many other points are ably discussed by counsel in their arguments, but we deem it unnecessary to comment upon them, as the views already expressed are deemed sufficient to dispose of the case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*