## Mary S. Stevens et al. v. Alice Partridge, Executrix, etc.

1. APPELLATE COURT PRACTICE—*Points Sought to be Made Here Must Have Been Litigated in the Trial Court.*—The mere fact that there is evidence in the record which is capable of sustaining a tenable theory of a party, is no ground for review in this court, unless it can be seen that the points sought to be made here were in fact litigated in the trial court.

2. PRINCIPAL AND SURETY—*What is Not a Breach of a Bond.*—Where a financial agent under bond to his employer for the proper performance of his duties, invests money with his employer's consent and directions as to where it should be used, and the investment turns out unsatisfactorily, such act is not a breach of the bond.

3. SAME—*How Surety May be Discharged.*—Any change in the duties of the principal will discharge the surety on his bond.

4. SAME—*Executor of Surety Has a Right to Stand on Exact Terms of Bond.*—A surety is bound only by the strict letter or precise terms of the contract of his principal whose performance of it he has guaranteed, and his executor has a right to stand upon the exact terms of the bond.

Debt, on a bond. Appeal from the Circuit Court of Effingham County; the Hon. WILLIAM M. FARMER, Judge presiding. Heard in this court at the February term, 1903. Affirmed. Opinion filed June 15, 1903.

W. B. WRIGHT, E. N. RINEHART and WOOD BROTHERS, attorneys for appellants.

R. C. HARRAH and S. F. GILMORE, attorneys for appellee.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

This is an action of debt brought by appellants against appellee as executrix of the estate of Joseph Partridge, senior, deceased. The cause was tried by a jury, who returned a verdict for the defendant, and judgment having been rendered thereon, plaintiffs below have brought this appeal.

The action is based upon a power of attorney and a bond, which are set forth in the case of Stevens v. Partridge, 88 Ill. App. 665. Eighteen breaches were assigned on the bond; the cause was tried on the declaration and a stipulation, which provided that appellants assumed the burden of proving the breaches, and that appellee assumed the burden of proof as to any affirmative defense, and that all matters might be proven, the same as if they had been properly pleaded by special pleas.

The record in this case is voluminous, relating as it does to the acts of Joseph Partridge, Jr., as the financial agent of appellants in handling an estate of between $80,000 and $90,000 belonging to appellants, during a period of four or five years. Appellee's testator signed the bond sued on, as joint principal with his son, Joseph Partridge, Jr., as may be seen from the bond; also Joseph Partridge, Jr., was principal, and appellee's testator, the father of Joseph, was surety; because the condition of the bond provides for the faithful performance by Joseph Partridge, Jr., of the duties of financial agent. The defaults provided for in the bond did not relate to any acts done, or omitted to be done, by Joseph Partridge, Sr., and therefore his relation to the

matters in issue could be no other than that of surety. But this relation, by reason of the structure of the bond, is by means of a position as joint obligor, which fact would authorize the acts and admissions of the financial agent to be given in evidence against his surety, from the fact that the principal and surety are joint obligors, as held in the former opinion in this case. (88 Ill. App. 670.) No material evidence of that character was offered on the trial, therefore this point becomes unimportant in the disposition of the cause.

Joseph Partridge, Jr., on the 10th of August, 1892, received between $80,000 and $90,000 from appellants, Mary S. Stevens and Julia Campbell, which he divided into two equal parts, opening separate books of account with each. He loaned money for the appellants, collected interest, rented houses and real estate for them, bought and sold commercial paper.

The breaches assigned are, that as financial agent he took insufficient security for money loaned; that securities were converted to his own use; that he lost money in running a banking business in the city of Chicago; that he loaned money to an insolvent corporation, known as the Brownell Improvement Company, which was engaged in constructing a system of waterworks in the city of Effingham for a private corporation which had a franchise to build such works, his father, the surety on the bond, being the president of the corporation, and Joseph, Jr., being himself a stockholder and director therein. And it is further claimed that, as such financial agent, he took several thousand dollars of the money of appellants and invested it in a furniture factory of his own, and that such money, through mismanagement, was lost; that as financial agent he failed to keep books of account.

We have carefully examined the record, especially on the error assigned, that the verdict is contrary to the evidence. Joseph Partridge, Jr., testified fully, and for anything this court is able to see, truthfully, as to all matters which were put in issue by the evidence, and appellants did not cross-examine him.

The defense made by appellee was that whatever money Joseph Partridge, Jr., lost for appellants was not lost in his capacity of financial agent, and that therefore the bond was not liable. All of the evidence taken bore more or less directly on this issue.

The testimony taken ranges itself under three leading sources of loss :

First. Improper bookkeeping, whereby the financial agent appropriated money to his use which did not justly belong to him.

Second. Money used in the Effingham Manufacturing Company, claimed to have been the private property of Joseph Partridge, Jr., the money being lost either because the enterprise was financially unsound or through mismanagement of the financial agent who controlled that business.

Third. Money lost in the purchase of a banking business in the city of Chicago, known as the Industrial Savings Bank, and money lost in making bad loans in the running of such business.

1. By the terms of his employment, the financial agent was to receive one-quarter of the net profits of the money handled. It is claimed by appellants that Joseph Partridge, Jr., credited to the profit and loss account moneys which were earned before he was employed as manager of their business; that rents from properties were credited to the same account in full, without deductions for repairs; and that interest was credited to the same account before it was in fact earned and collected; so that the claim is, in this way, a large sum came to his hands as compensation which he was not entitled to receive. If it should be admitted that the evidence tends to prove these claims, still we are of opinion that the record is not in condition to pass upon the questions presented, because they are raised here for the first time. Appellants themselves offered no evidence upon that issue; the deduction that wrongful bookkeeping has given their financial agent money he is not entitled to hold without a breach of his bond, is entirely based on the evidence of Joseph Part-

ridge, Jr., by the introduction of the ledgers containing the accounts of Mary S. Stevens and Julia Campbell.

No instructions were submitted to the court so as to raise the law questions which are claimed should control the facts shown by the ledger accounts and to give the jury an opportunity to pass upon the facts claimed to exist. The mere fact that there is evidence in the record which is capable of sustaining a tenable theory of a party, is no ground for review in this court, unless it can be seen that the points sought to be made here were in fact litigated in the trial court. To hold otherwise would be to try a case here *de novo*, instead of reviewing the record on assignment of errors. Hafner v. Herron, 165 Ill. 242.

2. The Effingham Manufacturing Company was a corporation located in the city where all the parties to the controversy reside. Its business was the manufacture of furniture. It seems that the business never prospered; appellants had $4,000 of stock in the enterprise. In May, 1894, the directors of the corporation were unable to pay its indebtedness and a meeting of the stockholders was called at that time; by a majority vote the stockholders sold the plant and personal property to Joseph Partridge, Jr., who was to pay the debts of the concern as the consideration of the transfer. Appellants claim that their financial agent put something like $12,000 into this manufacturing busissne and the money was lost; and that inasmuch as the business was his own, it is immaterial whether he used due care in the management or not, and that his bond is liable for such sum of money. On the other hand, appellee claims that Joseph Partridge, Jr., bought the plant for the purpose of saving appellants' stockholdings, and that though the title of the plant was in the name of Joseph Partridge, Jr., yet all of the time he held the property for the benefit of appellants and that they well understood that to be the fact; that all of the money which Joseph Partridge, Jr., put into the enterprise, was put there with the knowledge, consent and approval of appellants and for the sole purpose of saving the stock which

they already had in the business; that out of the $12,000 of appellants' moneys, Mrs. Stevens and her daughter, Julia Campbell, themselves, put directly into the company $5,000, which sum their financial agent did not loan for them at all.

Upon these contentions a large amount of testimony was taken, and in view of the fact that Joseph Partridge, Jr., in another suit indirectly involving the title to this manufacturing plant, testified without qualification that it belonged entirely to him, and he personally owed appellants about $12,000 borrowed from them, which went into the business, we have carefully read the evidence, because on the present trial he testified that he bought the plant solely for the benefit of appellants, to save their stockholdings.

While it must be admitted the testimony of Joseph Partridge, Jr., is contradictory and creates the impression he was intending to hold the furniture factory for himself if it proved a success, and to unload it on appellants if it proved a failure, yet there are considerations which lead us to say that the jury was justified in taking his statement on the present trial as presenting the truth of the ownership of the furniture factory. Appellants executed notes to the amount of $5,000 to pay the debts of the furniture factory; these debts were part of the consideration for the deed. If they understood that Joseph Partridge, Jr., was the owner of the plant, why did they put that amount of money into that enterprise without some understanding with Mr. Partridge that it was in fact a loan to him?

In June, 1895, appellant Julia Campbell signed a petition for a license from the secretary of state to organize a corporation to take over the business of the furniture factory. Stock was subscribed by appellants to the amount of $4,000, the exact amount of the holdings in the old corporation. It is not pretended that this stock was paid for in any other way than by the stock which the appellants already held in the old company; so that although the legal title to the plant and the accounts of the old corpo-

ration and the unmanufactured stock passed by the sale to
Mr. Partridge, yet he and appellants in the end treated the
property as belonging to themselves. The issue whether
the money which was put into this manufacturing plant
was put there with or without the directions of appellants
was fairly submitted to the jury. We see no reason why
the instructions on this issue do not state the law accurately,
and the jury has found that the money invested in the fur-
niture factory was put there by direction of appellants
themselves. This being true, one of two conclusions must
follow: either appellee's intestate did not undertake to
stand as surety for appellants' own acts and that what
Joseph Partridge, Jr., did in conjunction with appellants
when he advanced money to run the furniture factory was
not within the terms of the bond, or, if the terms of the
bond are broad enough to cover that kind of acts, appel-
lants' consent and directions as to where this money should
be used was in satisfaction of the bond and not in the
breach thereof; for their financial agent did " exercise due
diligence in the matter under his charge in the interest of
Mary S. Stevens, Julia Campbell and Albert Campbell,"
when he did the acts which were required of him by the
obligees in the bond. There is no pretense that the direc-
tions of appellants were secured through fraud or artifice
of their financial agent, and so long as that statement is
true, and the jury has found that appellants directed the
investment of the $12,000, of which complaint is made, the
law must be that there has been no breach of the bond.

3. The last contention relates to the loss of money in
the purchase of the Industrial Savings Bank of the City of
Chicago. That the sum of $37,500 of appellants' money
was used in the purchase of the bank is not questioned by
any one; the conflicting contentions are that appellants
formed a copartnership with Joseph Partridge, Jr., and
went into the banking business with him and consequently
there was a change in his duties and liability as financial
manager, and such steps having been taken without the con-
sent of the financial agent's surety, the bond sued on is

discharged.  Appellants contend that Joseph Partridge, Jr., on his own judgment, advanced the money in the purchase of the banking business, and that therefore it was invested by him in his character of financial agent under the power of attorney and the bond.  There was evidence to support each of these theories and we fail to see wherein there was any error committed by the court in the modification of the instruction which submitted to the jury the existence or non-existence of the partnership.  The fact that Albert Campbell, husband of Julia, consummated the purchase of the Industrial Savings Bank, is a strong circumstance that the act was by appellants themselves and that it was part of the contemplated copartnership which the evidence tends to show was established as soon as the business location of the bank had been secured.  We are unable to disturb the verdict of the jury on the question that a partnership was formed between appellants and their financial agent in the summer of 1895, for the purpose of carrying on a banking business; any other finding would be contrary to the weight of the evidence.  We are of the opinion that it is wholly immaterial whether the loans to the Brownell Improvement Company, amounting to between $22,000 and $23,000, were made with due care or not; also whether the settlement made between appellants and Mr. Brownell was a satisfaction of the bond or not. The law has long been established that any change in the duties of the principal will discharge the surety on his bond. Loaning the money of appellants as a copartner with them is loaning it in a different capacity from loaning it as their financial agent.  Loaning the money as partner is the act of appellants, no matter how improvident the loan may have been; loaning the money as financial agent would in no sense be the act of appellants except as to third parties.

As partner, Joseph Partridge, Jr., would be under obligations to be controlled by his copartners in the handling of money; as financial agent, he would have the right to rely upon his own judgment.  As copartner he would be liable for the acts of the other members of the partnership; as financial agent he would be responsible solely for

his own acts; and it was for the latter acts that appellee's testator engaged by his bond to become surety.

The executrix has a right to stand on the exact terms of the bond, unless her testator in some way helped to give a broader interpretation of the bond. 1 Brandt on Suretyship, Secs. 93, 94; McCartney v. Ridgway, 160 Ill. 129, 160. Appellants having varied the terms of the contract under which appellee's testator became bound for the financial agent, the bond was discharged. People v. Seelye, 146 Ill. 189; McCartney v. Ridgway, 160 Ill. 129; Brandt on Suretyship, Secs. 378, 393, 397. See also White Sewing Machine Co. v. Hines, 61 Mich. 423; Dupee v. Blake, 148 Ill. 462.

The points discussed by counsel, that Joseph Partridge, Sr., was really principal, because he was instrumental in getting his son appointed financial agent, and, as president of the First National Bank of Effingham, he was largely interested in having appellants pay off the old indebtedness of the furniture factory, to the bank, and as president of the water company, he was interested that appellants should, through the manipulation of his son, furnish money to build the waterworks system, in the bonds of which the son had a secret interest not known to appellants, would all be persuasive evidence in an action for damages against the estate. The present action is based on the terms of a bond and not upon supposed machinations, of which the bond forms a part.

Finding no material error in the record, the judgment of the Circuit Court is affirmed.